Joe E. EDWARDS *v.* Nancy C. EDWARDS

92-612                                        843 S.W.2d 846

Supreme Court of Arkansas
Opinion delivered December 21, 1992

*Everett, Stills & Gunderson,* for appellant.

*Batchelor & Batchelor,* by: *Fines F. Batchelor, Jr.,* for appellee.

STEELE HAYS, Justice. This dispute between brother and sister involves the construction of a deed and the will of their mother. Joe E. Edwards, appellant, and Nancy Edwards, appellee, are children of Edna Edwards, who died in December 1989. Two other children are not parties to this suit.

Edna Edwards purchased a home in Ft. Smith in April of 1988, accepting a warranty deed from the sellers "to Edna

Edwards and to Joe E. Edwards, her son, with right of survivorship." On September 28, 1988, Edna Edwards executed a will which contained a provision devising the identical property to all four of her children, "in equal shares, subject to a life estate to Nancy Carol Edwards, conditioned upon her occupying the home place and paying for taxes, insurance and repairs."

After the will was filed for probate in February 1990, Joe Edwards filed a complaint in circuit court against Nancy Edwards claiming ownership of the home by virtue of the warranty deed and alleging that Nancy was unlawfully in possession of the property. Nancy filed an answer claiming under the will. On Nancy's motion the case was transferred to chancery.

Nancy filed a counterclaim in chancery to quiet title to the property. The case was tried and the chancellor entered his decree, finding that Joe Edwards, by virtue of the deed, held the property as tenant in common with the estate of his mother, subject to the terms of her will. Joe Edwards argues that the trial court erred in finding he held the property only as a tenant in common and not as a joint tenant with right of survivorship.

The facts surrounding the execution of the warranty deed are these: Edna Edwards had concerns that her children be taken care of after she died. She had a particular concern that Nancy have a home to live in and there was testimony that she wanted Nancy to have the property in question to live in after she died. Edna had real estate holdings and also had a $65,000 CD, proceeds from her husband's life insurance. The $65,000 was used as payment on the home.

When Edna's husband died, Edna was living in a larger family home and decided to move to a smaller home in Ft. Smith. She meant for Nancy to live with her and to live in it after she died. Edna picked out the property in question, and decided to purchase it.

At the closing neither Nancy nor Joe was present. The closing was held at the real estate office of Caldwell-Banker Fleming-Lau, and in addition to Edna and the sellers, two real estate agents were present—Rosemary Jedlicka and Jan Ford. Ms. Jedlicka testified that the deed had been prepared by an abstract company and only Edna Edwards name was originally

listed as grantee. She testified that Edna requested that her son Joe be added to the deed, that Edna specifically requested that not only his name be added to the deed, but the particular words, "with right of survivorship" be included. There was other testimony from Jan Ford, suggesting there was no specific request for those words.

Ms. Jedlicka testified that she contacted the abstract office that had prepared the deed and they authorized the addition of these words. Ms. Jedlicka then typed in after Edna's name, in an obviously different type from the rest of the deed, "and Joe E. Edwards, her son, with right of survivorship." Eugene Wahl, head of the abstract firm, testified he would not have authorized such wording to create a joint tenancy.

In finding there was no joint tenancy, the chancellor specifically found that the words "with right of survivorship" were not the words of Edna Edwards, but were the words of the realtor who changed the deed. Joe Edwards does not dispute that finding, rather, he insists the language used in the deed creates a joint tenancy as a matter of law, and that the trial court erred in finding otherwise. However, for reasons to be explained, we hold that a resulting trust was created for the benefit of Nancy Edwards, rendering the wording of the deed moot.

On cross appeal, Nancy Edwards agrees that Joe Edwards had no survivorship rights in the property, but argues the chancellor erred in finding he held the property as a tenant in common with the estate of Edna Edwards. She advances two alternate theories deducible from the evidence: one, that Joe held the property as a mortgagee for Edna Edwards, and, two, that an implied trust was created for Nancy's benefit.

Under the mortgage theory, Nancy claims that Joe should be found to be a mortgagee as there was evidence he had claimed an interest in the $65,000 CD used to buy the property, and when Edna added Joe's name to the deed she intended it, in essence, as security for the use of his money. The trial court found, however, that by Joe's own admission he did not claim any interest in the $65,000, but testified unequivocally it belonged to his mother as beneficiary of life insurance proceeds.

Nancy Edwards does not dispute this finding but

merely argues there is room for another interpretation of the evidence. That however, is not the standard for review. Rather, we reverse only if it can be demonstrated that the trial court's findings are clearly against the preponderance of the evidence. Nancy Edwards has made no such showing.

■■ The second argument, an implied trust, does have merit. The term "implied trust" encompasses both constructive trusts and various types of resulting trusts. *See* 76 Am. Jur. 2d *Trusts* §§ 159-163 (1992); W. Fratcher, V *Scott on Trusts* §§ 404 through 404.2 (1989) (describing the three types of resulting trusts) and § 462 (describing constructive trusts). *Hickman* v. *The Trust of Heath, House & Boyles*, 310 Ark. 333, 835 S.W.2d 880 (1992); *Andres* v. *Andres*, 1 Ark. App. 75, 613 S.W.2d 404 (1981). A constructive trust arises in favor of persons entitled to a beneficial interest against one who secured legal title either by an intentional false oral promise to hold the title for a specified purpose, or by violation of a confidential or fiduciary duty, or is guilty of any other unconscionable conduct which amounts to a constructive fraud. *Andres* v. *Andres, supra.*

■ A resulting trust arises where one disposes of property under circumstances which raise an inference that he/she does not intend that the putative grantee should have the beneficial interest in the property. *Scott, supra,* at § 404.1. There are different types of resulting trusts but that which concerns us here is often called a purchase money resulting trust and arises where property is purchased and the purchase price is paid by one person and at his/her direction the vendor converts the property to another person. *Id.*

■ The distinction between a resulting and a constructive trust is discussed in *Scott*:

> A resulting trust is to be distinguished from a constructive trust. A constructive trust is imposed where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. The duty to convey the property may arise because it was acquired through fraud, duress, undue influence or mistake, breach of a fiduciary duty, or wrongful disposition of another's property. The basis of the constructive trust is

the unjust enrichment that would result if the person having the property were permitted to retain it. Ordinarily a constructive trust arises without regard to the intention of the person who transferred the property. On the other hand, a resulting trust arises in favor of the person who transferred the property or caused it to be transferred under circumstances raising an inference that he intended to transfer to the other a bare legal title and not to give him the beneficial interest.

*Scott, supra* at § 404.2.

The theory of a resulting trust is that grantors expect something for their money, and when they pay the purchase price, but direct that the property be conveyed to a third party who is a stranger, the presumption is there has been no gift to the third party but a conveyance of the property to be held in trust for the party who paid the purchase price. G.G. Bogert and G.T. Bogert, *The Law of Trusts and Trustees*, § 454 (2nd ed. 1991). If, however, the third party stands in such relationship to the party furnishing the purchase money as to be the natural object of his/her bounty, things get more complicated, as a gift may have been intended. Bogert, *supra*, § 459.

■ In general, a resulting trust must be proven by clear and convincing evidence. *Festinger v. Kantor*, 272 Ark. 411, 616 S.W.2d 455 (1981); *Crain v. Keenan*, 218 Ark. 375, 236 S.W.2d 731 (1951). *See also Walker v. Hooker*, 282 Ark. 61, 667 S.W.2d 637 (1984). In the *Festinger* case the grantees were the wife and daughter of the purchaser, and we noted the presumption that a gift was intended. In *Jones v. Wright*, 230 Ark. 567, 323 S.W.2d 932 (1959), a wife paid for land, and the deed conveyed it to her and her husband. We held that the burden was on the heirs to overcome the presumption of a gift from the wife to the husband. In *First National Bank v. Rush*, 30 Ark. App. 272, 785 S.W.2d 474 (1990), our Court of Appeals dealt with the same question and stated the presumption of gift could be overcome only by "clear and convincing proof that no such gift was intended."

■ While we find no Arkansas case dealing with purchase by a mother naming her son as grantee, the same principles should apply. As Bogert points out:

Where *a mother* is the payor and a child is made the grantee, with the mother's consent, the courts have not been entirely unanimous in their application of a presumption. Most decisions, however, treat the case in the same way as where the father pays the price, and presumes a gift, whether the child be an adult or an infant. . . . Gifts from her to the children, out of mere generosity or for the purpose of distributing her estate at the end of her life, are quite natural and common. [Bogert, *supra*, § 460, pp. 360-365. (Citations omitted; emphasis in original.)]

Was the evidence in this case so clear and convincing as to overcome the presumption of a gift? We think so.

Here the evidence pointed unerringly to the conclusion that Edna Edwards did not intend for Joe to have any beneficial interest under the deed, but was to act in the role of administrator or trustee of the property in case of her death so that the property could be distributed according to her will, specifically, to her four children equally subject to a life estate to Nancy. The testimony of Joe Edwards effectively confirms that conclusion.

In sum, the total proceeds with which the real estate was purchased came from Edna Edwards; Joe furnished no part of the consideration for the purchase of the real estate in question; although Joe Edwards paid the premiums on the policy of insurance on his father's life, he made no claim whatever to that money, but acknowledged it was intended to be a resource to care for his mother, although a certificate of deposit including Joe's name was included on the CD so he could assist in taking care of his mother; Joe, the oldest of the four children, had discussed with his parents and had understood that his parents were counting on him to carry out their intent that Nancy and their brother, Jerry, have a home the rest of their lives; Joe had known at all times that his mother intended for Nancy to have the property as her home the rest of her life, yet said nothing to his mother indicating he would not see that this was done; Joe had known of the desire of his mother and her intent that the property go to Nancy for life with remainder to the four children equally at the end of her life estate. Joe testified that after the death of his mother he intended that Nancy have the property as her home the rest of her life but he changed his mind after Nancy declined certain demands he

made with regard to other matters, and after he had learned his name was on the deed.

In light of the above evidence, and the chancellor's finding that Edna Edwards did not request the survivorship phrase be added to the deed, the clear import of the testimony, including that of Joe Edwards, was that the property in question was purchased with Edna's money so Nancy would have a place to live after her mother died, i.e., a life estate; and the only reason Joe's name would have been added to the deed was to allow him to act as administrator or trustee of the property when Edna died and to carry out the wishes of his mother for Nancy's life estate.

Affirmed on direct appeal, reversed on cross appeal and remanded for further proceedings not inconsistent with this opinion.