Mark BROWN  *v.*  Laura BROWN

07-994                                                284 S.W.3d 17

Supreme Court of Arkansas
Opinion delivered May 1, 2008

*Compton, Prewett, Thomas & Hickey, LLP*, by: *Floyd M. Thomas, Jr.*, for appellant.

*Bell Law Firm, P.A.*, by: *Ronny J. Bell* and *Karen Talbot Gean*, for appellee.

ANNABELLE CLINTON IMBER, Justice. Appellant Mark Brown appeals from an order of the Union County Circuit Court, which divided marital property and set child support. He cites the following four points where the circuit court erred: 1) in determining the amount of child support when it considered the income attributable to Mark in a limited partnership; 2) in considering Mark's interest in the limited partnership to justify an unequal division of marital property; 3) in finding that the increase in value of the limited partnership's stock brokerage accounts was marital property; and 4) in finding that two residences were marital property. Because this appeal presents issues of first impression and of significant public

interest, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(1) & (4) (2007). We find no error and affirm.

Mark and Laura Brown were married in September of 1986 and separated in July of 2005. Laura sought a divorce from Mark on the grounds that they had been living separate and apart for eighteen continuous months. Following a trial, the circuit court entered a decree of divorce, granting temporary custody of the two minor children to Laura, setting temporary child support at $250 per week, and taking all issues of property division under advisement until such time as posttrial briefs were submitted. A letter opinion confirmed by final decree granted custody of the children to Laura and ordered Mark to pay child support in the amount of $384 per week, based on his two-year average income. The circuit court determined that the increase in value of Mark's inheritance from his father, which was maintained in a limited partnership with Mark's mother, was marital property. The court also found that the marital residence and another piece of real estate, both of which his mother had helped to purchase with funds from the limited partnership, were marital property. Because Mark's non-marital estate was valued at $3,032,703, while Laura's was valued at only $306,780, the court found an unequal division of the marital property to be appropriate. Mark filed a timely notice of appeal.[1]

The limited partnership at issue in this appeal was formed in 1995 under the laws of the State of Louisiana. Mark's father, George A. Brown, had earned considerable income as the owner of cocktail lounges, liquor stores, and commercial real estate. He died in 1990 and had bequeathed to Mark, his only child, all property owned at his death, with the exception of the marital home and certain furnishings within it and his wife's one-half share of their community property estate. George A. Brown's will noted that Mark's inheritance was "subject to the usufruct heretofore granted to my wife, Billie Jean Brown." Mark and his mother, Billie Brown, created the G.A. Brown Properties Limited Partnership after George A. Brown's death, for the purpose of managing the estate.

Billie Brown was the sole general partner and was also a Class A limited partner; Mark was a Class B limited partner. Each owned a fifty percent partnership interest. Mark contributed to the partnership the property he had inherited from his father, and

---

[1] Laura filed a notice of cross-appeal but has since abandoned her arguments.

Billie Brown contributed her one-half share of the community property estate. The partnership agreement contained the following provision:

> Mark S. Brown specifically acknowledges that pursuant to the Judgment of Possession rendered by the First Judicial District Court, Caddo Parish, Louisiana in the Succession of George A. Brown on August 25, 1993, as amended by said Court on November 12, 1993, the property which he contributes to this Partnership is subject to a usufruct in favor of his mother Billie J. Brown and that such usufruct attaches to and continues over the Class B Limited Partnership interest which he receives in exchange for such property on the same terms and conditions as the usufruct over the contributed property itself[.]

According to the agreement, the partnership's profits and losses were to be allocated proportionately between the partners, according to their partnership interests. Mark testified that his mother had discretion as to whether to share the partnership's income with him. He stated that his mother had gifted certain amounts of money to him from the partnership's assets, but that he had not received income from the partnership. An accountant testified, however, that Mark's mother had the option to "yield" the usufruct with respect to properties in the partnership that had been changed from their original form. If the property was no longer part of the original corpus, Billie Brown could allocate a portion of its income to her son, provided that he was willing to accept the income and to pay taxes on it. According to the accountant's testimony, Billie Brown had in the past chosen to allocate certain income to Mark, and he had accepted the income.

The marital residence was purchased with funds provided by Mark's mother from the G.A. Brown Properties Limited Partnership. Testimony by the parties and by Mark's mother indicated that the home was intended to be a gift. Mark and Laura later acquired a mortgage on the house to pay for an addition. Payments on the note were made by Mark and Laura.

The other property at issue, known as the West Oak Street property, was purchased as a home for Mark's mother, who at one point intended to relocate to El Dorado from her former home in Shreveport, Louisiana. The funds for the down payment on the property and for some, if not all, of the mortgage payments came from the G.A. Brown Properties Limited Partnership. For estate-

tax purposes, however, the property was titled jointly in the names of Mark and Laura. At the time of trial, Mark's mother had not yet moved into the home, and Mark was residing there. While Laura agreed that the purpose of purchasing the property was to provide a home for Mark's mother, she contended that she had an interest in the property, as it was titled in her name along with Mark's.

## I. Child Support

For his first point on appeal, Mark argues that it was error for the circuit court to consider his income from the limited partnership in determining the appropriate amount of child support, because that income was not available for his use. He contends that the usufruct in favor of his mother prevented him from realizing any income from the partnership and that the only distributions made to him were provided so that he could pay taxes on the income attributed to him.

Our standard of review for an appeal from a child-support order is *de novo*, and we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Hardy v. Wilbourne*, 370 Ark. 359, 259 S.W.3d 405 (2007). In reviewing a circuit court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Id.* However, a circuit court's conclusion of law is given no deference on appeal. *Id.*

In determining an appropriate amount of child support, courts are to refer to the family support chart contained in our Administrative Order Number 10. *See* Ark. Code Ann. § 9-12-312(a)(2) (Repl. 2008). The family support chart provides a means of calculating child support based on the payor's net income. Administrative Order Number 10 defines income as "any form of payment, periodic or otherwise, due to an individual, regardless of source, including wages, salaries, commissions, bonuses, workers' compensation, disability, payments pursuant to a pension or retirement program, and interest less proper deductions." Ark. Sup. Ct. Administrative Order No. 10(II). It is well established that this definition of income is broadly construed, intended to encompass the widest range of potential income sources. *Davis v. Office of Child Support Enforcement*, 341 Ark. 349, 20 S.W.3d 273 (2000); *White v. White*, 95 Ark. App. 274, 236 S.W.3d 540 (2006). The administrative order also states that for self-employed payors, support is to be calculated based on the last two years' federal and state income

tax returns and the quarterly estimates for the current year.[2] Ark. Sup. Ct. Administrative Order No. 10(III)(c).

■ The circuit court in the instant case calculated Mark's child-support obligation based upon the income reported on his 2004 and 2005 tax returns. Thus, pursuant to the administrative order and its broad definition of income, the calculation was correct. We are unconvinced by Mark's argument that his income from the partnership should not have been considered because it was not realized. The administrative order does not distinguish between realized and recognized income. While our court of appeals has cautioned that income for child-support purposes may differ from income for tax purposes, the cases articulating a difference have done so only when the circuit court disallowed depreciation deductions or recognized gain as income upon the sale or disposition of property. *See White v. White, supra; Brown v. Brown,* 76 Ark. App. 494, 68 S.W.3d 316 (2002); *Stepp v. Gray,* 58 Ark. App. 229, 947 S.W.2d 798 (1997).

■ Moreover, the administrative order instructs that the court should also consider "the amount the payor is capable of earning or a net worth approach based on property, life-style, etc." Ark. Sup. Ct. Administrative Order No. 10(III)(c). We affirmed the use of the net-worth approach for child-support determinations in *Tucker v. Office of Child Support Enforcement,* 368 Ark. 481, 247 S.W.3d 485 (2007). It is clear that Mark's ownership interest in the G.A. Brown Properties Limited Partnership is a significant portion of his net worth; thus, that ownership interest would be a proper consideration. In the instant case, we cannot say that the circuit court clearly erred in finding that Mark's income for child-support purposes was that reflected on his tax returns.

## II. Unequal Division of Marital Property

For his second point on appeal, Mark contends that it was error for the circuit court to consider his interest in the limited partnership in determining that an unequal division of the marital

---

[2] The parties do not dispute the contention that Mark is a self-employed payor. He was employed at the time of trial as an analyst with El Dorado Chemical, where he earned approximately $40,000 per year. However, the occupation listed on his 2004 and 2005 tax returns was "manager-investment." His testimony at trial confirmed that he considered himself to be a manager-investor, with that being his primary occupation throughout the marriage.

property was appropriate. He argues that, due to the usufruct in favor of his mother, the property in the partnership has no present value, and perhaps even no future value, to him.

With respect to the division of property in a divorce case, we review the chancellor's findings of fact and affirm them unless they are clearly erroneous or against the preponderance of the evidence. *Conlee v. Conlee*, 370 Ark. 89, 257 S.W.3d 543 (2007). The division of property itself is also reviewed, and the same standard applies. *Id.* A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Id.* In order to demonstrate that the chancellor's ruling was erroneous, an appellant must show that the trial court abused its discretion by making a decision that was arbitrary or groundless. *Id.* We give due deference to the chancellor's superior position to determine the credibility of witnesses and the weight to be given their testimony. *Id.*

■ A circuit court has discretion to consider the parties' potential opportunities for further acquisition of property when determining the appropriate division of marital assets. At the time a divorce decree is entered, all marital property is to be distributed one-half to each party, unless the court finds such a division to be inequitable. Ark. Code Ann. § 9-12-315(a)(1)(A) (Repl. 2008). In that event, the court is to make some other division that the court deems equitable, taking into consideration several factors: the length of the marriage; age, health, and station in life of the parties; occupation of the parties; amount and sources of income; vocational skills; employability; estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income; contribution of each party in acquisition, preservation, or appreciation of marital property, including services as a homemaker; and the federal income tax consequences of the court's division of property. *Id.* Clearly, in reaching a determination as to the equitable division of marital property under this statute, the circuit court was free to consider Mark's interest in the G.A. Brown Properties Limited Partnership, and his opportunity to double the size of his estate upon the death of his mother. The limitation on Mark's interest in the partnership, in the form of the usufruct, is of no relevance, as the opportunity to add to his estate is a proper consideration.

In addition, Mark has received some present value from the partnership. He testified to routine distributions from the partnership since its inception, noting specifically two pieces of real estate; a boat, motor, and trailer; vacations; gas for his vehicle; and cellular telephone service. Therefore, his contention that his interest in the partnership should have been ignored by the court because it had no present value to him is unavailing.

Likewise, his claim that the partnership may have no future value to him is without merit. Under Louisiana law, Mark will receive the value of his contribution to the partnership at the termination of the usufruct, which will occur at the time of his mother's remarriage or death. The Louisiana Civil Code defines consumable things as things "that cannot be used without being expended or consumed, or without their substance being changed, such as money, harvested agricultural products, stocks of merchandise, foodstuffs, and beverages." La. Civ. Code Ann. art. 536. With respect to consumables subject to a usufruct, the usufructuary becomes the owner of them. La. Civ. Code Ann. art. 538. Thus, Mark's mother "may consume, alienate, or encumber them as [s]he sees fit." *Id.* However, at the termination of the usufruct, she is "bound to pay to the naked owner either the value that the things had at the commencement of the usufruct or deliver to him things of the same quantity and quality." *Id.*

Conversely, nonconsumable things are defined as things "that may be enjoyed without alteration of their substance, although their substance may be diminished or deteriorated naturally by time or by the use to which they are applied, such as lands, houses, shares of stock, animals, furniture, and vehicles." La. Civ. Code Ann. art. 537. With respect to nonconsumable things subject to a usufruct, "the usufructuary has the right to possess them and to derive the utility, profits, and advantages that they may produce, under the obligation of preserving their substance." La. Civ. Code Ann. art. 539. However, as the usufructuary, Mark's mother is "bound to use them as a prudent administrator and to deliver them to the naked owner at the termination of the usufruct." *Id.*

Mark will receive value from his interest in the limited partnership at the time of his mother's remarriage or death. He has already been the recipient of distributions from the partnership. Therefore, the circuit court did not err in considering his partnership interest in determining that an unequal division of the marital property was appropriate.

### III. Increase in Value of Partnership Interest

For his third point on appeal, Mark contends that the increase in value of the limited partnership's stock brokerage accounts is his separate property. He also argues that the circuit court erred in failing to set forth its reasons for awarding the increase in value of those accounts to him in the division of the marital assets.

The definition of marital property excludes property "acquired prior to marriage or by gift or by reason of the death of another, including, but not limited to, life insurance proceeds, payments made under a deferred compensation plan, or an individual retirement account, and property acquired by right of survivorship, by a trust distribution, by bequest or inheritance, or by a payable on death or a transfer on death arrangement." Ark. Code Ann. § 9-12-315(b)(1). Under this exclusion, Mark's interest in the G.A. Brown Properties Limited Partnership, which he received by inheritance, was properly deemed nonmarital property. The definition of marital property also excludes the "increase in value of property acquired prior to marriage or by gift or by reason of the death of another." Ark. Code Ann. § 9-12-315(b)(5).

Our case law has articulated an exception to this rule for the active appreciation of nonmarital assets. In *Layman v. Layman*, 292 Ark. 539, 543, 731 S.W.2d 771, 774 (1987), we held that "when one spouse makes significant contributions of time, effort and skill which are directly attributable to the increase in value of nonmarital property . . . the presumption arises that such increase belongs to the marital estate." We affirmed this rule under the current version of the statute in *Farrell v. Farrell*, 365 Ark. 465, 476, 231 S.W.3d 619, 627 (2006), wherein we stated that "we follow an 'active appreciation' analysis in determining if one spouse's efforts significantly contributed to the increase in value of nonmarital assets." In accordance with these decisions, the circuit court in the instant case did not err in determining that the increase in value of the nonmarital accounts was marital property. By Mark's own admission, he expended considerable time and effort during the marriage managing and investing the assets of the partnership.

Mark nonetheless contends that the *Farrell* decision is inapplicable here because the *Farrell* court did not decide whether the increase in value of the stocks at issue was marital or nonmarital

property. We disagree. This court, in addressing the issues on cross-appeal, held that the trial court "correctly concluded that the increase in value of the nonmarital stock was due in large part to Ms. Farrell's efforts. As we follow an 'active appreciation' analysis . . . we cannot say that the trial court erred in finding that the increase in value was a marital asset." *Id.* at 476, 231 S.W.3d at 627. In short, the *Farrell* decision supports the circuit court's conclusion in the instant case that Mark's efforts, which resulted in the increase in value of the accounts, caused the increase to be classified as marital property.

█ We also fail to see any merit in Mark's argument that the circuit court failed to set forth its reasons for awarding him the increase in value of the accounts. It is true that the circuit court is required to state its basis and reasons for not dividing the marital property equally between the parties, and that the basis and reasons should be recited in the order. Ark. Code Ann. § 9-12-315(a)(1)(B). The circuit court is not required to list each factor in the order or to weigh all factors equally. *Hernandez v. Hernandez*, 371 Ark. 323, 265 S.W.3d 746 (2007). Furthermore, the specific enumeration of the factors within the statute does not preclude a circuit court from considering other relevant factors, where exclusion of other factors would lead to absurd results or deny the intent of the legislature to allow for the equitable division of property. *Id.*

The statute does not require that the circuit court list its basis and reasons regarding each individual piece of marital property. Instead, it "must state its basis and reasons for not dividing the marital property equally between the parties." Ark. Code Ann. § 9-12-315(a)(1)(B). We have never required the circuit court to state individual reasons for each piece of property. Moreover, the circuit court in the instant case sufficiently set forth its reasons for determining that an equal division of the marital property was inappropriate:

> A.C.A. § 9-12-315 sets forth the factors to consider in an unequal division of property. In this case the parties have been married 20 years, are in the 40s (Plaintiff, 43; Defendant, 45); in good health and have an affluent lifestyle. Plaintiff is the corporate credit manager for Murphy Oil Corporation with a salary and bonuses of approximately $90,000. Defendant is a lab analyst for El Dorado Chemical Company with a salary of $41,598. In addition, Defendant manages his investments which produced $70,322 in earnings

and capital gains for 2005. Each party has above average vocational skills as a result of their education and work experience and should maintain stable employment at the present or a higher level. The factor which weighs most heavily in the decision for an unequal division of the marital property is the size of the estate and the opportunity of each party to increase their estate. The value of Plaintiff's nonmarital estate is $306,780 while Defendant's is $3,032,703. Defendant's estate could double in value with an inheritance from his mother. There was no evidence of any possibility of a similar inheritance by Plaintiff. Plaintiff's retirement plans will have to arise from her continued employment. Defendant's retirement plans can be satisfied from his present estate. From the consideration of the statutory factors, I find that an unequal division of marital property is appropriate.

## IV. Real Estate

For his final point on appeal, Mark argues that the circuit court erred in its disposition of both the marital residence and the West Oak Street property. With respect to the marital residence, he contends that the circuit court should have either divided it equally or set forth its reasons for refusing to do so. With respect to the West Oak Street property, he argues that a purchase–money resulting trust was established in favor of Billie Brown and that the property therefore should not have been considered in the division of marital property.

### 1. Marital Residence

Mark relies on Ark. Code Ann. § 9-12-317 (Repl. 2008) for the proposition that "entirety property" is not marital property and that it is to be divided equally between the parties unless the court finds that an equal division would be inequitable, in which case the court must use the criteria set forth in Ark. Code Ann. § 9-12-315 to distribute the property. He contends that the marital residence was entirety property that should have been divided equally, rather than granted to his wife in the court's unequal division of the marital assets. However, section 9-12-317 actually says that estates by the entirety or by survivorship held by parties to a divorce are automatically dissolved upon divorce, unless a court order specifically provides otherwise. Ark. Code Ann. § 9-12-317(a). The parties are to be treated thereafter as tenants in common. Id. The statute also provides that when a court "dissolves estates by the entirety or survivorship in real or personal property

under this section, the court may distribute the property as provided in § 9-12-315. The court shall set forth its reasons in writing in the decree for making an other than equal distribution to each party, when all the property is considered together, taking into account the factors enumerated in § 9-12-315(a)(1)." Ark. Code Ann. § 9-12-317(c).

■ The marital residence was owned by Mark and Laura as tenants by the entirety. Thus, the circuit court had the option of disposing of the property in the manner required for the distribution of marital property, that is, one-half to each party unless such a division would be inequitable. The circuit court adequately set forth its reasons for the unequal division of the property, as outlined earlier in this opinion. The court was not required to provide reasons specific to the marital residence, but rather to provide reasons for the unequal division "when all the property is considered together." Ark. Code Ann. § 9-12-317(c). Thus, the court fulfilled its obligation to supply its reasoning.

### 2. West Oak Street Property

Mark relies on this court's opinion in *Edwards v. Edwards*, 311 Ark. 339, 843 S.W.2d 846 (1992), in support of his argument that Billie Brown owned a purchase-money resulting trust in the West Oak Street property. As we stated in *Edwards*, a resulting trust arises where one disposes of property under circumstances that raise an inference that he or she does not intend that the putative grantee should have the beneficial interest in the property. *Id.* Instead, the inference is that the transferor intends to transfer only bare legal title. *Id.* A resulting trust arises in favor of the person who transfers the property or causes it to be transferred. *Id.* More specifically, a purchase-money resulting trust "arises where property is purchased and the purchase price is paid by one person and at his/her direction the vendor converts the property to another person." *Id.* at 343, 843 S.W.2d at 849.

We stated in *Edwards* that when a grantor directs that the property be conveyed to a third party who is a stranger, there is a presumption that there has been no gift to the third party but a conveyance of the property to be held in trust for the grantor. *Id.* "If, however, the third party stands in such relationship to the party furnishing the purchase money as to be the natural object of his/her bounty, things get more complicated, as a gift may have been intended." *Id.* at 344, 843 S.W.2d at 849 (citing G.G. Bogert

& G.T. Bogert, *The Law of Trusts and Trustees* § 459 (2d ed. 1991)). Generally, a resulting trust must be proven by clear and convincing evidence. *Id.* In situations involving third parties who are the natural objects of the grantor's bounty, the presumption of a gift must be overcome by clear and convincing proof that no such gift was intended. *Id.* We stated the following in *Edwards*:

> Where a *mother* is the payor and a child is made the grantee, with the mother's consent, the courts have not been entirely unanimous in their application of a presumption. Most decisions, however, treat the case in the same way as where the father pays the price, and presume a gift, whether the child be an adult or an infant. . . . Gifts from her to her children, out of mere generosity or for the purpose of distributing her estate at the end of her life, are quite natural and common.

*Id.* at 345, 843 S.W.2d at 849 (quoting Bogert, *supra*, § 460, at 360-65) (emphasis in original).

In the instant case, the testimony indicated that the West Oak Street property was titled in Mark's and Laura's names in order to avoid estate taxes. As contemplated in the Bogert treatise, Mark's mother made a gift to her child "for the purpose of distributing her estate at the end of her life." *Id.* Moreover, Mark testified that the property was placed in his and his wife's names "just so it wouldn't be an estate. If mother passes away, we wouldn't have that as a tax consequence. *It would already be ours.*" This testimony suggests that Billie Brown intended for her son and his wife to have a beneficial interest in the property, subject only to her use of it during her lifetime. In addition, Mark was residing in the West Oak Street house at the time of trial, and his mother was not, indicating a beneficial interest in Mark's favor. Finally, Billie Brown testified as follows, when asked about her intentions with respect to the West Oak Street property: "[I]nstead of paying cash for it like I usually do everything else I decided I was going to get some interest, you know, and I thought it might as well go to him so I went ahead and just put it in his name, but I'm paying for it." Again, the evidence suggests an intention on the part of Billie Brown to grant her son a beneficial interest in the property. Thus, the presumption of a gift has not been overcome by clear and convincing proof, and no purchase-money resulting trust arose. The property was correctly deemed marital property.

Affirmed.