

# SUPREME COURT OF ARKANSAS
No. CV-15-180

| | |
|---|---|
| JOHN DAVID MOORE | Opinion Delivered: March 10, 2016 |
| APPELLANT | APPEAL FROM THE LOGAN COUNTY CIRCUIT COURT [42BDR-12-71] |
| V. | |
| NANCY MOORE | |
| APPELLEE | HONORABLE DAVID MCCORMICK, JUDGE |
| | REVERSED AND REMANDED; COURT OF APPEALS' OPINION VACATED. |

**RHONDA K. WOOD, Associate Justice**

Appellant John David Moore ("David") appeals a decree entered by the Logan County Circuit Court granting appellee Nancy Moore ("Nancy") a divorce on the ground of general indignities. He argues that the circuit court erred in dividing the growth of his business as a marital asset, awarding Nancy alimony in the amount of $5,000 per month, and considering the division of property and alimony in isolation. We granted the parties' joint petition for review of the court of appeals' decision dismissing the appeal because the divorce decree was not a final, appealable order. We hold that the decree is a final order and reverse and remand as to the circuit court's division of the growth of David's business and the alimony award for an entry of an order consistent with our findings herein.

The parties, David Moore and Nancy Moore, were married on April 27, 2007. On June 18, 2012, Nancy filed for divorce. David answered and counterclaimed. The parties litigated the appropriate property distribution and alimony issues. Specifically, David

requested an equal distribution of marital property. Nancy requested that the court also divide and award her half of the growth of David's company, Moore U.S. Mail Contractor, Inc., which was a nonmarital business. She contended that the growth in value of the business was a marital asset to be divided between the parties. David also contested the amount of alimony requested by Nancy.

On February 5, 2014, the circuit court entered a divorce decree. In it, the circuit court determined that David owned the company prior to the marriage, and therefore, it was nonmarital property. However, the circuit court found that the company's increase in value was a marital asset because David spent a substantial amount of time during the marriage working to increase its value. The court also found that the company's stock value increased as a result of Nancy's participation in, and contributions to, the company. It concluded that the increase in the business's value during the marriage was $556,365.05 and awarded Nancy one-half of that amount.

The circuit court also awarded Nancy $5,000 per month in alimony to be paid until she is sixty-five years old. The basis for this award was Nancy's financial need and David's income, as well as Nancy's health, education, and prior work experience. Notably, in 2012, Nancy underwent surgery to remove a brain tumor. She and others testified that she had continuing medical complications as a result of the procedure, including short-term memory loss, weakness, difficulties with depth perception, and panic attacks. The circuit court noted that Nancy's medical condition was the "most significant factor presented in support of her request."

SLIP OPINION

David appealed, arguing that the circuit court erred in awarding Nancy one-half of the growth of his business during the marriage and alimony of $5,000 per month until she is sixty-five years old. The court of appeals dismissed the appeal, finding that the divorce decree was not final for purposes of appeal, citing the following paragraph:

> Plaintiff's Exhibits 37, 38, and 39 were three separate Warranty Deeds (legal description is attached as Exhibit "C") which described a third tract of real estate involved in this case. Those deeds were from different grantors but did not convey all of those grantors' interest in the same real estate to the Plaintiff and Defendant as tenants by the entirety. The court reduces the parties to tenants in common as to this tract of real estate and orders the same sold upon such terms and conditions as to which the parties may agree. If the parties are unable to agree upon the terms and conditions of sale after 180 days, then either party is free to petition to the court to have the same sold by the clerk of this court. All proceeds after costs of sale shall be divided equally between the parties.

*Moore v. Moore*, 2015 Ark. App. 115, at 1. The court of appeals noted that the decree directed the parties to come to an agreement and, in the event that they could not reach an agreement, required them to return to the court for an order for the property to be sold by the clerk. *Id*. The court held that the decree was not final because it did not fully dispose of the parties' property. *Id*. The court then dismissed the appeal without prejudice. *Id*. The parties jointly filed a petition for review in this court, arguing that the court of appeals' decision conflicted with prior holdings from this court, which we granted.

## I.     *Finality*

The finality issue in this case is similar to that in *Davis v. Davis*, 2016 Ark. 64. For the same reasons recently expressed in *Davis*, we hold that the divorce decree is a final, appealable order. As in *Davis*, the decree in this case does not include language requiring the parties to return to court for further judicial action. Rather, it allows for alternative methods of property distribution and gives the parties a specific period of time to work out

their differences as well as an enforceable judicial resolution if they are unable to reach an agreement within the time period set by the court. As it adequately addresses every issue presented by the parties and reserves no issues for later determination, the order is final and appealable. Accordingly, we vacate the court of appeals' opinion that the divorce decree is not a final, appealable order. Moreover, because this case involves a significant issue concerning statutory construction and the overruling of precedent, which are the province of this court, we proceed to address the merits of the appeal.[1]

## II.    *Standard of Review*

On appeal, divorce cases are reviewed de novo. *Skokos v. Skokos*, 344 Ark. 420, 40 S.W.3d 768 (2001). We review the circuit court's findings pertaining to division of property and alimony and affirm them unless they are clearly erroneous or against the preponderance of evidence. *Id*.; *Taylor v. Taylor*, 369 Ark. 31, 250 S.W.3d 232 (2007). A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Skokos*, 344 Ark. at 425, 40 S.W.3d at 772. The appellant must show that the trial court abused its discretion by making a decision that was arbitrary or groundless. *Id*. We give due deference to the circuit judge's position to determine the credibility of witnesses and the weight given to their testimony. *Id*.

---

[1] The dissents contend that this case like *Kelly v. Kelly*, which also addressed the issue of finality, should be remanded to the court of appeals for reconsideration on the merits. 2016 Ark. 72. However, unlike in *Kelly,* the circuit court in this case relied on a faulty judicially created doctrine when dividing the parties' property. If this court remanded, the court of appeals would be required to apply that doctrine as precedent, and we would be addressing this issue when the case returned to us on review. This suggested approach does not further efficient administration of justice.

SLIP OPINION

SLIP OPINION

Furthermore, when we grant a petition for review, we consider the appeal as though it had been originally filed in this court. *Bohannon v. Robinson*, 2014 Ark. 458, 447 S.W.3d 585.

### III.    Property Division

For his first point on appeal, David claims that the trial court erred in finding that the increase in value of his business is a marital asset to be equally divided between the parties. David claims the circuit court wrongly interpreted the statute, and we review issues involving statutory interpretation de novo, as it is for this court to determine what a statute means. *Dep't of Human Services v. Howard*, 367 Ark. 55, 238 S.W.3d 1 (2006).

David contends that the growth of a his nonmarital business remained nonmarital property under Arkansas Code Annotated section 9-12-315(b)(5) (Repl. 2015) and is not subject to division. He recognizes that this court has carved out an exception to the statute, but contends it was inapplicable to the facts in this case. In support of the property division, the circuit court utilized the "active appreciation" analysis we adopted in *Layman v. Layman*, 292 Ark. 539, 731 S.W.2d 771 (1987). We do not assess whether the court correctly applied the "active appreciation" analysis to the facts because we find that this analysis directly conflicts with Arkansas Code Annotated section 9-12-315. We find merit in David's argument that the growth of the business is nonmarital property according to section 9-12-315(b)(5). The circuit court relied on our precedent involving active appreciation when reaching its decision, but our precedent conflicts with the statutory language.

This issue of property division deals squarely with the interpretation of section 9-12-315. The basic rule of statutory construction is to give effect to the intent of the legislature. *Rose v. Ark. State Plant Bd.*, 363 Ark. 281, 213 S.W.3d 607 (2005). We construe the statute

just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* Where the language of a statute is plain and unambiguous, we determine legislative intent from the meaning of the language used. *Id.* A statute is ambiguous only where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *Id.* However, when a statute is clear, it is given its plain meaning, and this court will not search for legislative intent. Rather, that intent must be gathered from the plain meaning of the language used. *Id.* "This court is very hesitant to interpret a legislative act in a manner contrary to its express language, unless it is clear that a drafting error or omission has circumvented legislative intent." *Cave City Nursing Home, Inc. v. Ark. Dep't of Human Servs.*, 351 Ark. 13, 89 S.W.3d 884 (2002).

In a divorce action, statutory law requires that all marital property be divided equally to each party, unless the circuit court finds the division to be inequitable, in which case, the circuit court may make a division that it deems equitable. Ark. Code Ann. § 9-12-315(a). Section 9-12-315(b)(5) defines marital property as "all property acquired by either spouse subsequent to the marriage except . . . the increase in value of property acquired prior to marriage . . . ." Thus, under section 9-12-315(b)(5) the increase in value of property during a marriage is nonmarital, without exception, and should be returned to the owning party.

In *Layman*, this court added a caveat to the legislature's determination that "the increase in value of property acquired prior to the marriage" is a nonmarital asset. 292 Ark. at 542–43, 731 S.W.2d at 773–74. It reasoned that when the appreciation in the value of separate property during the marriage is the result of efforts of the spouse owning the

6

nonmarital property, the appreciation is a marital asset. *Id.* The court concluded that "when one spouse makes significant contributions of time, effort and skill which are directly attributable to the increase in value of nonmarital property, . . . the presumption arises that such increases belong to the *marital estate*." 292 Ark. at 543, 731 S.W.2d at 774 (emphasis added).

More recently, we applied this analysis in *Farrell v. Farrell*, 365 Ark. 465, 475–76, 231 S.W.3d 619, 626–27 (2006); *see also Brown v. Brown*, 373 Ark. 333, 284 S.W.3d 17 (2008). In *Farrell*, the parties were married for approximately twenty years. Prior to the marriage, Mrs. Farrell acquired stock in ARC, Inc., and the stock value increased during the course of the marriage, in part, as a result of her time and efforts within the company. 365 Ark. at 475, 231 S.W.3d at 626–27. We held that, while the stock was a nonmarital asset under section 9-12-315(b) because Mrs. Farrell purchased it prior to the marriage, the circuit court correctly concluded that the entire increase in the stock value was property of the marriage under the "active appreciation" analysis. Although the *Farrell* court determined that an unequal distribution was equitable based on the factors set forth in section 9-12-315(a), absent such a finding, the court could have divided the increase in value of the shares equally between the parties. *Id.*

*Layman* and its progeny clearly conflict with the statutory scheme. Our legislature, by enacting section 9-12-315, has defined marital property in ordinary terms and determined how property should be divided among spouses at the time of the divorce. This is a matter of policy with which the legislature, not this court, is almost exclusively tasked. *See Hatcher v. Hatcher*, 265 Ark. 681, 580 S.W.2d 475 (1979); *McNew v. McNew*, 262 Ark. 567, 559

S.W.2d 155 (1977). The public policy of this state is best evidenced by its statutes, and because the legislature has plainly detailed how property is to be divided, we should apply the statute as written. *See Hatcher*, 265 Ark. at 687, 580 S.W.2d at 477. Not only does the "active appreciation" analysis of *Layman* write an exception into the statute, it clearly conflicts with the statute's plain language. Section 9-12-315(a) provides our courts with broad discretion and flexibility to redistribute marital and nonmarital property to achieve an equitable distribution. Our courts should work within the confines of the statute to accomplish this goal.

Additionally, some courts have confused the rule in *Layman* by weighing the efforts of the owning and nonowning spouse when determining whether nonmarital property should be reclassified as marital. *See Davis v. Davis*, 79 Ark. App. 178, 84 S.W.3d 447 (2002). Indeed, in this case the circuit court considered Nancy's contributions to the company, in addition to David's, in concluding that the increase in value in the company was a marital asset. This was erroneous even under *Layman*. Accordingly, we find it appropriate to return to the statute's plain language, which states that "the increase in the value of property acquired prior to marriage" is nonmarital. Accordingly, to the extent that *Layman*, *Farrell*, and *Brown* redefined marital property through the "active appreciation" rule, which conflicts with section 9-12-315, we expressly overrule them. *Layman v. Layman*, 292 Ark. 539, 731 S.W.2d 771 (1987); *Farrell v. Farrell*, 365 Ark. 465, 231 S.W.3d 619 (2006); *Brown v. Brown*, 373 Ark. 333, 284 S.W.3d 17 (2008).

The dissents argue that stare decisis compels the opposite result. The policy behind stare decisis is to lend predictability and stability in the law. However, we will overrule

precedent "when there has been a palpable error in legal analysis." *Ward v. State*, 2016 Ark. 61, 4, 455 S.W.3d 830, 833. Similarly, in *In re Guardianship of W.L.* this court overruled precedent for almost the same reason as in the present case. 2015 Ark. 289, 467 S.W.3d 129. The court there stated that it was overruling precedent in order to "return to the statute's plain language." *Id.* at 7, 467 S.W.3d at 133. The court explained that the judiciary had created tests that had moved the law "too far from the statute." *Id.* Likewise, in this case, because the court has taken the statutory language and rewritten it to achieve a contrary result, we are compelled to serve justice by returning to the statute's clear language. The legal analysis behind *Laymon* and its progeny, regarding the judicially created "active appreciation doctrine" contains a palpable error, and it is patently wrong to the extent we now must overrule it in order to return to the statute's plain language.

In this case, it is undisputed that David's interest in his company, Moore U.S. Mail Contractor, Inc., was acquired before his marriage to Nancy. Therefore, it is a nonmarital asset and the circuit court erred by considering it marital property and awarding Nancy half of the growth of the business. *See* Ark. Code Ann. § 9-12-315(a)(2).

We recognize that our property-division statute permits the division of nonmarital property if the circuit court deems it equitable after taking into consideration several factors, including the following: the length of the marriage; age, health, and station in life of the parties; occupation of the parties; amount and sources of income; vocational skills; employability; estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income; contribution of each party in acquisition, preservation, or appreciation of marital property, including services as a homemaker; and

SLIP OPINION

the federal income tax consequences of the court's division of property. Ark. Code Ann. § 9-12-315(a)(2). In such instances the circuit court must recite its basis and reasons for not returning the nonmarital property. *Id.*

Here, the circuit court did not make findings under section 9-12-315(a)(2) to justify a distribution of nonmarital property. Instead, the court considered it marital property. For these reasons, we reverse and remand for the circuit court to enter an order awarding David the growth of his business as his nonmarital property absent a specific statutory finding to justify any distribution to Nancy.

## IV.  Alimony

David next argues that the circuit court erred in granting Nancy $5,000 per month in alimony until she reaches age sixty-five. The purpose of alimony is to rectify economic imbalance in the earning power and standard of living of the parties to a divorce in light of the particular facts of each case. *Kuchmas v. Kuchmas*, 368 Ark. 43, 45–46, 243 S.W.3d 270, 271–72 (2006). The primary factors that a court should consider in determining whether to award alimony are the financial need of one spouse and the other spouse's ability to pay. *Id.* The circuit court may also consider secondary factors, such as (1) the financial circumstances of both parties; (2) the couple's past standard of living; (3) the value of jointly owned property; (4) the amount and nature of the parties' income, both current and anticipated; (5) the extent and nature of the resources and assets of each of the parties; (6) the amount of income of each that is spendable; (7) the earning ability and capacity of each party; (8) the property awarded or given to one of the parties, either by the court or the other party; (9) the disposition made of the homestead or jointly owned property; (10) the

condition of health and medical needs of both husband and wife; (11) the duration of the marriage; and (12) the amount of child support (if applicable). *Id.*

At the hearing on the divorce petition, Nancy testified to the nature and amount of her income, both current and anticipated. She stated she had graduated from high school and attended one semester of college. Prior to her marriage to David, she worked as an administrative assistant at a bank and had been offered a position as a loan officer shortly before she began working for David at his mail-delivery business. In 2012, she underwent surgery to remove a brain tumor. Following the surgery, she suffered from ongoing medical problems, which prevented her from returning to work as an administrative assistant. Several witnesses testified as to their personal observations of Nancy following the surgery.

David argues that the alimony award is erroneous because Nancy offered no medical testimony regarding her prognosis and ability to return to the workforce in the future. Because the circuit court undertook the proper analysis after hearing the parties' testimony and reviewing the evidence, we hold that the alimony award was not an abuse of discretion.

The circuit court concluded that David could afford a sum of $5,000 per month and considered Nancy's health and medical needs in addition to her education, prior work experience, and other financial needs. The court noted its observations of Nancy during the hearing, including an unanticipated event which caused her to appear to suffer from a panic attack. He found her medical issues to be legitimate. While it considered Nancy's health to be the most significant factor presented, the court analyzed and weighed all the relevant factors. Despite the short length of the marriage and the exceptional amount of alimony awarded, the circuit court was in the best position to view the parties, and we

SLIP OPINION

SLIP OPINION

repeatedly have held that we will not reverse a finding by the circuit court in an equity case unless it was clearly erroneous. *Taylor v. Taylor*, 369 Ark. 31, 250 S.W.3d 232 (2007); *McKay v. McKay*, 340 Ark. 171, 8 S.W.3d 525 (2000). Nevertheless, because we consider property division and alimony complementary devices that the circuit court may utilize in combination to make the dissolution of marriage equitable, we remand this issue to the circuit court to reconsider alimony when it redistributes the parties' property. *See Boyles v. Boyles*, 268 Ark. 120, 594 S.W.2d 17 (1980); *Davis*, 79 Ark. App. at 185–86, 84 S.W.3d at 451–52.

V.     *Property Division and Alimony*

Finally, David asserts that the court considered the property division and award for spousal support in isolation, and as a result, issued an inequitable award. We cannot find any support in the record for this argument. In setting the amount of alimony, the circuit court fully considered the statutory factors, one of which is the distribution of assets. Appellant even acknowledged in his brief that the decree stated that alimony was determined after considering "the amount of assets [Nancy] is awarded herein." We find no abuse of discretion.

Reversed and remanded; court of appeals' opinion vacated.

Special Justices CHAD L. ATWELL and DANIEL GREENBERG join in this opinion.

BRILL, C.J., WYNNE, J., concur in part and dissent in part.

BRILL, C.J., and WYNNE, J., dissent.

DANIELSON and GOODSON, JJ., not participating.

**HOWARD W. BRILL, Chief Justice, concurring in part and dissenting in part.** I agree with the majority that the circuit court's order is final and appealable, but I strongly dissent from the part of the opinion in which the majority decides, sua sponte, to break from precedent and overrule *Layman v. Layman*, 292 Ark. 539, 731 S.W.2d 771 (1987), *Farrell v. Farrell*, 365 Ark. 465, 231 S.W.3d 619 (2006), and *Brown v. Brown*, 373 Ark. 333, 284 S.W.3d 17 (2008).

"[T]he doctrine of *stare decisis* is of fundamental importance to the rule of law." *Hilton v. S. Carolina Pub. Rys. Comm'n*, 502 U.S. 197, 202 (1991) (quoting *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 494 (1987)). Adherence to precedent is necessary to promote "stability, predictability, and respect for judicial authority." *Id.* Precedent governs until it gives a result so patently wrong, so manifestly unjust, that a break becomes unavoidable. *E.g.*, *Cochran v. Bentley*, 369 Ark. 159, 174, 251 S.W.3d 253, 265 (2007). "[W]hen a principle has been once declared and acquiesced in, in subsequent cases it should be adhered to, unless great injury and injustice would necessarily result from such adherence." *Roane v. Hinton*, 6 Ark. 525, 527 (1846).

Statutes should receive a consistent and uniform interpretation so that they shall not be taken to mean one thing at one time, and a different thing at another time. *See Morris v. McLemore*, 313 Ark. 53, 55, 852 S.W.2d 135, 136 (1993). When a statute has been construed, and that construction has been consistently followed for many years, such construction should not be changed. *Id.*, 852 S.W.2d at 136.

Nearly three decades ago, this court construed the property-division statute at issue in this case to mean that when one spouse makes significant contributions of time, effort,

and skill which are directly attributable to the increase in value of nonmarital property, the presumption arises that such increase belongs to the marital estate. *Layman*, 292 Ark. at 543, 731 S.W.2d at 774. Since then, the legislature has not amended the statute in any way to express its disagreement with our decision in *Layman*. Legislative silence for nearly thirty years gives rise to an arguable inference of acquiescence or passive approval of our construction of the statute. *See Chapman v. Alexander*, 307 Ark. 87, 90, 817 S.W.2d 425, 427 (1991). The General Assembly is presumed to be familiar with the appellate courts' interpretation of a statute, and if it disagrees, it can amend the statute. *E.g.*, *Tyson Poultry, Inc. v. Narvaiz*, 2012 Ark. 118, at 7, 388 S.W.3d 16, 21. Without such amendments, however, the appellate courts' interpretation of the statute remains the law. *Id.*, 388 S.W.3d at 21; *see also Neal v. United States*, 516 U.S. 284, 296 (1996) ("Congress, not this Court has the responsibility for revising its statutes. Were we to alter our statutory interpretations from cases to case, Congress would have less reason to exercise its responsibility to correct statutes that are thought to be unwise or unfair."); *Francis v. S. Pac. Co.*, 333 U.S. 445, 450 (1948) (stating that the longstanding interpretation of the statute itself becomes "part of the warp and woof" of the legislation); *E.C. Barton & Co. v. Neal*, 263 Ark. 40, 43, 562 S.W.2d 294, 295 (1978) (recognizing that this court's construction of a statute becomes as much a part of the statute as the words of the statute itself and that change is a matter that addresses itself to the General Assembly, not this court).[2]

---

[2] Perhaps the most famous example of adherence to statutory precedent is the decision of the Supreme Court of the United States in *Flood v. Kuhn*, 407 U.S. 258 (1972), in which the Court was asked for the third time in fifty years to rule that professional baseball's reserve system was within the reach of federal antitrust laws. *See Fed. Baseball Club*

Under the separation-of-powers doctrine, the legislature has the power and responsibility to proclaim the law through statutory enactments, and the judiciary has the power and responsibility to interpret legislative enactments. *McCutchen v. City of Ft. Smith*, 2012 Ark. 452, at 15, 425 S.W.3d 671, 681; *see also* Ark. Const. art. IV, §§1, 2. It was up to the legislature to amend the statute if it disagreed with our interpretation. *See, e.g.*, *Burns v. Burns*, 312 Ark. 61, 65, 847 S.W.2d 23, 26 (1993) (declining to reverse our construction of the marital-property statute and leaving change, if any, in the word "property" to the General Assembly). The General Assembly has not done so, and this court should not act in its stead.

---

*of Baltimore v. Nat'l League of Prof'l Baseball Clubs*, 259 U.S. 200 (1922) (holding that the business of providing public baseball games for profit between clubs of professional baseball players was not within the scope of federal antitrust laws); *Toolson v. N.Y. Yankees, Inc.*, 346 U.S. 356 (1953) (per curiam) (reaffirming baseball's exemption from federal antitrust laws and stating that any change in statutory precedent should come from Congress).

In 1970, Curt Flood, the All-Star centerfielder, filed an antitrust suit in federal court challenging the transfer of his contract from the St. Louis Cardinals to the Philadelphia Phillies. Even though baseball appeared to be the only professional sport operating interstate that was exempt from antitrust laws, the Court would not alter its longstanding statutory interpretation. The Court opined,

> If there is any inconsistency or illogic in all this, it is an inconsistency and illogic of long standing that is to be remedied by the Congress and not by this Court. If we were to act otherwise, we would be withdrawing from the conclusion as to congressional intent made in *Toolson* and from the concerns as to retrospectivity therein expressed. Under these circumstances, there is merit in consistency even though some might claim that beneath that consistency is a layer of inconsistency.

*Flood*, 407 U.S. at 284.

The Court never changed its interpretation of the statute. Congress acted when it passed the Curt Flood Act of 1998, 15 U.S.C. § 26(b), which addresses the application of antitrust laws to the reserve clause of major league baseball.

Finally, I am troubled by the majority's decision to overrule *Layman*, *Farrell*, and *Brown* because neither party requested that those cases be overruled. Neither party had a quarrel with the rule announced in *Layman* and followed in *Farrell* and *Brown*. Rather, David contended that *Farrell* was inapplicable because the facts in his case were distinguishable from the facts in *Farrell*. Nancy contended that *Farrell* was controlling. Nevertheless, without the aid of briefs and without having been requested to act, this court overrules itself and reverses the circuit court, which properly followed our longstanding precedent.

As a general rule, "[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in judgment). "[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008); *see also* Adam A. Milani and Michael R. Smith, *Playing God: A Critical Look at Sua Sponte Decisions by Appellate Courts*, 69 Tenn. L. Rev. 245, 252 (2002) (stating that sua sponte decisions by appellate courts are inconsistent with the adversary process because they are "contrary to its (1) central premise that the adversarial clash provides a court with the best arguments and analysis on an issue, (2) emphasis on neutral and passive decision makers, and (3) commitment to party presentation of evidence and arguments").

It is clear that the majority disagrees with the rule announced in *Layman*. But the validity of that rule is not before the court. Judge Richard Arnold wisely stated that courts "do not, or should not, sally forth each day looking for wrongs to right. We wait for cases

SLIP OPINION

to come to us, and when they do we normally decide only questions presented by the parties." *United States v. Samuels,* 808 F.2d 1298, 1301 (8th Cir. 1987) (R. Arnold, J., concurring in denial of reh'g en banc). The question of whether the court should overrule *Layman* and its progeny should be reserved for another day.

WYNNE, J., joins.

**ROBIN F. WYNNE, Justice, dissenting.** We granted a joint petition for review in this case following our court of appeals's decision dismissing the appeal for lack of a final order. *Moore v. Moore*, 2015 Ark. App. 115. While I fully agree with the majority that the finality issue presented is controlled by our recent decision in *Davis v. Davis*, 2016 Ark. 64, and that the divorce decree is a final, appealable order, I must dissent for two reasons. First, in order to be consistent with our decision in *Kelly v. Kelly*, 2016 Ark. 72, I would decide the finality issue presented in the petition for review, vacate the court of appeals's opinion, and remand the appeal to the court of appeals for reconsideration. There is absolutely no reason to treat this appeal differently than *Kelly*. In this case, as in *Kelly*, the issue needing clarification or development of the law and upon which there was a perceived inconsistency in the decisions of this court and the court of appeals is a threshold issue of finality. The points on appeal regarding the division of property and alimony present no issues that this court must resolve. Second, the majority errs in sua sponte overruling our precedent dating back nearly thirty years. In arguing that the circuit court erred in dividing the growth in the business during the parties' marriage, David attempts to distinguish the present case from *Farrell v. Farrell*, 365 Ark. 465, 231 S.W.3d 619 (2006). In *Farrell*, this court applied an active-appreciation analysis in determining whether a spouse's efforts significantly

17

contributed to the increase in the value of non-marital assets. Quoting *Layman v. Layman*, 292 Ark. 539, 543, 731 S.W.2d 771, 774 (1987), we stated that "when one spouse makes significant contributions of time, effort and skill which are directly attributable to the increase in value of nonmarital property, . . . the presumption arises that such increase belongs to the marital estate." *Farrell*, 365 Ark. at 475-76, 231 S.W.3d at 627.

In his brief, David argues that the facts of the present case distinguish it from *Farrell*:

> Admittedly, on the wording of the standard, *Farrell* appears to apply to this case and require affirmance of the trial court's decision. Distinctions between the two cases exist, however, and those distinctions ought to prevent application of the active appreciation analysis here. An examination of the facts in *Farrell* as compared to the facts in this case demonstrates the distinctions.
> . . . .
>
> These distinguishing facts remove this case from the exception recognized in Farrell. The trial court failed to take note of any of them within the portion of its decision to order division of the growth of the company. That was error requiring reversal.

As demonstrated above, David does not ask this court to overrule the line of cases that includes *Layman* and *Farrell*. This court has been resolute in stating that we will not make a party's argument for that party or raise an issue sua sponte, unless it involves the circuit court's subject-matter jurisdiction, which we will raise on our own. *Sullivan v. State*, 2012 Ark. 178. We have further made it clear that we will not consider an argument unless it has been properly developed. *Id.* In the present case, however, the majority breaks from this clear precedent and overrules a line of cases dating back nearly thirty years.

Under the doctrine of stare decisis, we are bound to follow prior case law. *Chamberlin v. State Farm Mut. Auto. Ins. Co.*, 343 Ark. 392, 397, 36 S.W.3d 281, 284 (2001); *see also Lewellen v. Sup. Ct. Comm. on Prof'l Conduct*, 353 Ark. 641, 647, 110 S.W.3d 263, 266

(2003). The policy of stare decisis is designed to lend predictability and stability to the law. *Id.* When this court ignores the doctrine of stare decisis and overrules long-standing precedent without the benefit of the parties having raised and developed the issue, a great disservice is done to the bench and the bar. Here, the active-appreciation analysis regarding the distribution of nonmarital property has governed our case law for nearly thirty years. While the majority believes that our case law "conflicts" with Arkansas Code Annotated section 9-12-315(b)(5), I note that when a statute has been construed, and that construction has been consistently followed for many years, such construction should not be changed. *Low v. Ins. Co. of N. America*, 364 Ark. 427, 220 S.W.3d 670 (2005). As time passes, the interpretation given a statute becomes part of the statute itself. *Id.* It is well-settled that "[p]recedent governs until it gives a result so patently wrong, so manifestly unjust, that a break becomes unavoidable." *Aka v. Jefferson Hosp. Ass'n, Inc.*, 344 Ark. 627, 641, 42 S.W.3d 508, 518 (2001). Our test is whether adherence to the rule would result in "great injury or injustice." *Id.* Here, there is no injury or injustice alleged, much less proven, and the majority errs in overruling *Layman v. Layman*, 292 Ark. 539, 731 S.W.2d 771 (1987), and its progeny.

BRILL, C.J., joins.

*Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*; and *Danielson Law Firm*, by: *Elizabeth Danielson*, for appellant.

*Gean, Gean & Gean*, by: *David Charles Gean*, for appellee.