2010 Ark. 431

**Antwan Lavan FOWLER, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 10–103.**

Supreme Court of Arkansas.

Nov. 11, 2010.

Rehearing Denied Dec. 16, 2010.

 

Teresa Bloodman, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: Nicana C. Sherman, Ass't Att'y Gen., for appellee.

JIM HANNAH, Chief Justice.

 ╷₁Antwan Lavan Fowler entered a conditional plea of guilty under Arkansas Rule of Criminal Procedure 24.3 and now seeks appellate review of the circuit court's denial of his motions to suppress evidence and statements. This appeal was heard by the Arkansas Court of Appeals. *See Fowler v. State*, 2010 Ark. App. 23, 2010 WL 135209. This court granted a petition for review filed by the State of Arkansas. When we grant a petition for review, we treat the appeal as if it had been originally filed in this court. *Osborn v. Bryant*, 2009 Ark. 358, 324 S.W.3d 687. Our jurisdiction is pursuant to Arkansas Supreme Court Rules 1–2(e) and 2–4. The decision of the circuit court on the motions to suppress is reversed, and this case is remanded for proceedings consistent with this opinion.

On October 22, 2007, Fowler was arrested for fleeing and transported to the Conway╷₂Police Department. He was charged with misdemeanor counts of fleeing and obstruction of justice. Because Fowler had been charged with misdemeanors, he would have been released. However, because it was learned that he was on parole, parole officers were notified of his arrest. The parole officers asked police officers to hold Fowler. They subsequently interrogated Fowler, who admitted that he had possessions in his home that violated his probation and the law. His home was searched, and a gun, illegal drugs, a stolen credit card, and a set of scales were found. Fowler was charged with possession of a controlled substance while in possession of a firearm, felon in possession of a firearm, possession of a controlled substance with

the intent to deliver, possession of drug paraphernalia, theft by receiving, fleeing while knowing that his "immediate arrest or detention was being attempted by a duly authorized law enforcement officer," and obstruction of justice. This appeal followed his conditional plea on the denial of his motion to suppress evidence and motion to suppress statements.

The issue on appeal regarding suppression turns on the validity of the police stops and requires that we closely examine the facts surrounding the stops and his seizure. At about 7:25 a.m. on October 22, 2007, Conway police officers Shawn Schichtl and Paul Burnett were on patrol duty together in a police vehicle working the "school zones" about a half a block from Conway High School. They observed a person, later identified as Fowler, walking through a backyard on private property behind a house or apartments. Fowler's presence on private property in the early morning, and his close proximity to the school, caused the officers concern. Schichtl testified that he wondered what Fowler was doing there, whether he might be a truant student or whether he might have broken into a nearby home. The officers drove around a corner to draw closer to Fowler, and Schichtl called and asked Fowler to come over to their vehicle. Schichtl testified that he asked Fowler his name, and that Fowler started to approach them but then blurted some word and ran. Burnett testified that he thought Fowler said "Jason" just before he ran.

Burnett left the police vehicle and pursued Fowler on foot, but Fowler eluded him by running through nearby housing. Schichtl pursued Fowler in the vehicle and caught him some distance away. According to Schichtl, when he caught up with Fowler, Fowler said, "I'm giving up." Schichtl testified that he told Fowler to get on the ground and that he then took Fowl-er into custody, placed him under arrest for fleeing, and put him in handcuffs. At this point, Schichtl was alone with Fowler and did not know his name. He testified that "I didn't get his name there I don't think." Schichtl testified that other officers responded to the scene. It is unclear which officer obtained Fowler's name; however, it is clear that his name was obtained after his arrest. In the circuit court, the prosecuting attorney confirmed that Fowler's name was obtained after his arrest stating that, "[o]nce they had him in custody—or where they had him detained, he did tell them his identity, and it was then found he was on parole." Fowler first argues that the initial stop when Schichtl called to him was illegal because police had no reasonable suspicion justifying the stop. Fowler next asserts that his "running was an understandable response for a young and slight African–American approached by two large white police officers," and that police had no "specific or articulable" facts justifying the second stop when they arrested him.

At issue are Fowler's encounters with police. This court has stated that encounters with police may be separated into three categories:

> The first and least intrusive category is when an officer merely approaches an individual on a street and asks if he is willing to answer some questions. Because the encounter is in a public place and is consensual, it does not constitute a "seizure" within the meaning of the fourth amendment. The second police encounter is when the officer may justifiably restrain an individual for a short period of time if they have an "articulable suspicion" that the person has committed or is about to commit a crime. The initially consensual encounter is transformed into a seizure when, considering all the circumstances, a reasonable

person would believe that he is not free to leave. The final category is the full-scale arrest, which must be based on probable cause.

*Cockrell v. State,* 2010 Ark. 258, at 17, 370 S.W.3d 197, 207 (quoting *Thompson v. State,* 303 Ark. 407, 409, 797 S.W.2d 450, 451–52 (1990) (citing *United States v. Hernandez,* 854 F.2d 295 (8th Cir.1988))).

■ On the first stop, police approached Fowler, asked him to come to their vehicle, and asked him his name. They did so because he seemed suspicious to them. This first stop is of the first category where a person is asked whether he or she is willing to answer some questions. *See* Ark. R.Crim. P. 2.2(a). Police may certainly approach persons in public to ask if they are willing to answer questions. There was no constitutional violation in the initial stop nor was it violative of Rule 2.2.

Under the first encounter, Fowler was free to ignore the police and leave. Rather than simply ignore police, Fowler blurted some word in response to the request for his name and ran. We now consider whether the facts that police possessed at the time that they first stopped Fowler, combined with Fowler's blurting an unintelligible response when asked his name, and his immediate running, constituted the reasonable suspicion required to justify the pursuit and second stop. Additionally, assuming the second stop was proper, we must consider whether police transformed the second stop into an illegal seizure.

The State asserts that Fowler's running alone was justifiable cause for police to stop and arrest him. Fowler argues that without reasonable suspicion to stop him, police did not have the authority to pursue and stop him when he ran. Fowler also challenges the arrest as an illegal seizure.

■ Fowler's reaction at the first stop to the officer's request for his name was to blurt something and run. The officers pursued, stopped, and detained Fowler. Where police have reasonable suspicion that a person may be involved in criminal activity, they may "stop the person for a brief time and take additional steps to investigate further."[1] *Hiibel v. Sixth Judicial Dist. Ct. of Nev.,* 542 U.S. 177, 185, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004) (citing *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). The issue of what role unprovoked flight plays in a reasonable suspicion determination was discussed in *Illinois v. Wardlow,* 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). In *Wardlow,* the defendant was holding an opaque bag and standing on the street in an area known for heavy narcotics trafficking. Upon noticing the police, he fled. After discussing the facts in the case that led to the officers' reasonable suspicion, the Supreme Court went on to state that "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Wardlow,* 528 U.S. at 124, 120 S.Ct. 673. Thus, the defendant's flight was an additional factor justifying the offi-

---

1. Arkansas Rule of Criminal Procedure 3.1 discusses the stop and detention of persons and provides as follows:

 A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to ob-

tain or verify the identification of the person or to determine the lawfulness of his conduct. An officer acting under this rule may require the person to remain in or near such place in the officer's presence for a period of not more than fifteen (15) minutes or for such time as is reasonable under the circumstances. At the end of such period the person detained shall be released without further restraint, or arrested and charged with an offense.

cers' determination that they had reasonable suspicion to pursue the defendant. The Court stated that "[h]eadlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Id.* The Court also stated that "the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." *Id.*, 528 U.S. at 125, 120 S.Ct. 673. In *Wardlow*, the fact that the defendant was in an area of heavy illegal-drug trafficking holding an opaque bag, along with his unprovoked flight, provided reasonable suspicion justifying the pursuit and stop. In the case before us, the totality of the circumstances arising from Fowler's early morning presence in a backyard of a residential area in close proximity to a school, along with his blurted response when asked his name, and his running, provided the officers reasonable suspicion to pursue and stop Fowler when he ran.

■ But, our analysis does not end there. Pursuant to *Wardlow*, the stop permitted when there is a determination that reasonable suspicion exists "allow[s] the officer to briefly investigate further." *Id.*, 528 U.S. at 126, 120 S.Ct. 673. If upon the stop, "the officer does not learn facts rising to the level of probable cause, the individual must be allowed to go on his way." *Id.*

■ In *Wardlow*, the brief investigation disclosed that the opaque bag contained a firearm, and the defendant was arrested for violation of an Illinois firearms statute. In the present case, no investigation was undertaken prior to Fowler's arrest. As already noted, Schichtl arrested Fowler upon catching him. Schichtl testified that when he caught Fowler, he did not search him. Rather, he handcuffed Fowler while placing him under arrest for fleeing. After the arrest, Schichtl made no attempt to determine whether Fowler lived in the area. He did not charge him with trespassing. At the police station, Schichtl and Burnett charged Fowler with fleeing and obstruction of justice, which was consistent with the reason they gave for chasing Fowler—because he ran. Fowler's name was not ascertained until after his arrest. There is no evidence showing that the arresting officers carried out any investigation as allowed under *Wardlow*. Had police ascertained Fowler's name prior to his arrest and radioed for a background check, they doubtless would have learned he was on parole. That is not what happened in this case. The arresting officer, Schichtl, first learned Fowler was on parole after the arrest when he read a printout at the police department. There was a postarrest radio call from an unidentified officer who provided Fowler's name and birth date and asked that the printout be made, which presumably is the printout later seen by Schichtl and Burnett. But, Fowler had already been arrested by Schichtl before that call was made. Both Schichtl and Burnett testified that, to the best of their recollection, they learned Fowler was on parole at the police department when they were booking him. Thus, it is apparent that the stop and brief detention afforded by *Wardlow* was not undertaken by the officers. They simply arrested Fowler for fleeing. While they had reasonable suspicion under *Wardlow* to make the stop, they transformed the stop into an illegal seizure by arresting him instead of carrying out the brief investigation permitted.

Fowler raises additional points on appeal. Because we reverse on the second stop and on the arrest, we need not address the remaining issues. The circuit court is reversed and ordered to suppress the evidence and statements at issue on this appeal.

BROWN, J., dissents.

ROBERT L. BROWN, Justice, dissenting.

The salient issue in this case is whether Conway Police Officers Schichtl and Burnett had reasonable cause to arrest Fowler for two misdemeanors—(1) fleeing on foot to avoid arrest, or (2) obstructing the performance of their duties by falsely identifying himself. The majority concludes there was no probable cause to arrest Fowler as a parole violator because this information was not obtained until after the arrest. But what about the two misdemeanor offenses—fleeing and obstruction? To me this is the critical issue, and the majority opinion does not address it. I believe the two police officers were justified in arresting Fowler for either fleeing or obstruction or both. For that reason, I dissent from the majority's opinion.

The criminal information in this case was filed on October 22, 2007, and contained six felony charges and the two misdemeanor charges of fleeing and obstruction. The offense of fleeing reads as follows: "[i]f a person knows that his or her immediate arrest or detention is being attempted by a duly authorized law enforcement officer, it is the lawful duty of the person to refrain from fleeing, either on foot or by means of any vehicle or conveyance." Ark.Code Ann. § 5–54–125(a) (Supp.2009). Fowler clearly believed his immediate arrest or detention was imminent because he was violating his parole by being in Faulkner County. It was his "lawful duty" to refrain from fleeing. However, Fowler did exactly what it was his lawful duty not to do; he fled. He could have simply not talked to the police officers and walked away. He was well within his rights to do so. *See Illinois v. Wardlow*, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). And yet he ran, thereby committing the crime of unlawful fleeing.

The offense of obstructing governmental operations reads as follows: "[a] person commits the offense of obstructing governmental operations if the person: [k]nowingly obstructs, impairs, or hinders the performance of any governmental function . . . [or] [f]alsely identifies himself or herself to a law enforcement officer or a code enforcement officer." Ark.Code Ann. § 5–54–102(a)(1), (4) (Supp.2009). Fowler violated this statute, which prohibits a person from obstructing governmental operations, in two ways—(1) by fleeing from police officers after being asked to stop and identify himself, and (2) by falsely identifying himself. An examination of how other states interpret similar obstruction statutes supports the conclusion that Fowler violated our obstruction statute by not identifying himself and by fleeing from the Conway police officers.

In Georgia, a person is guilty of misdemeanor obstruction of officers if he or she knowingly or willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties. Ga. Code Ann. § 16–10–24(a). Georgia appellate courts have held on numerous occasions that flight after a lawful command to halt can constitute obstruction of an officer under Georgia Code Annotated section 16–10–24(a). *See, e.g., Cofield v. State,* 304 Ga.App. 165, 695 S.E.2d 696 (2010); *In re E.G.,* 286 Ga.App. 137, 648 S.E.2d 699 (2007); *Dukes v. State,* 275 Ga.App. 442, 622 S.E.2d 587 (2005); *Patterson v. State,* 244 Ga.App. 222, 535 S.E.2d 269 (2000); *Rodriguez v. State,* 211 Ga.App. 256, 439 S.E.2d 510 (1993). The Georgia Court of Appeals has also recognized that there is a clear distinction between flight as circumstantial evidence of guilty knowledge generally and flight as an act constituting an element of misdemeanor obstruction of an officer's request. *See Rodriguez,* 439 S.E.2d at 512.

In Indiana, a person commits the crime of resisting law enforcement, a class A misdemeanor, if he or she knowingly or intentionally "flees from a law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself or herself and ordered the person to stop." Ind. Code § 35–44–3–3.

In *Cole v. State*, the Indiana Court of Appeals held that the defendant had no right to flee from and forcibly resist the officer, even if the officer did not have reasonable suspicion to stop the defendant. 878 N.E.2d 882, 886 (Ind.App.2007). The court said that it is well settled law in Indiana that "an individual may not flee from a police officer who has ordered the person to stop, regardless of the apparent or ultimate lawfulness of the officer's order." *Id.*

Citing the New Jersey Supreme Court, the Indiana court explained:

> [A]ny flight from police detention is fraught with the potential for violence because flight will incite a pursuit, which in turn will endanger the suspect, the police, and innocent bystanders. Cases abound in which a suspect's flight from the police set in motion an ensuing chase that resulted in death or serious injury either to a police officer, a suspect, or a bystander. For practical and public-policy-based reasons, constitutional decisionmaking cannot be left to a suspect in the street, even on who has done no wrong; a suspect cannot be the judge of his own cause and take matters into his own hands and resist or take flight. This reasoned approach encourages persons to avail themselves of judicial remedies, and signals that if a person peaceably submits to an unconstitutional stop the result will be suppression of the evidence seized from him.

*Id.* (citing *State v. Williams*, 192 N.J. 1, 926 A.2d 340, 347 (2007) (quotations and citations omitted)). Adopting this rationale, the Indiana court held that even if a police officer does not have reasonable suspicion to stop a defendant, the defendant has no right to flee when the officer orders him to stop. *Id.*

In the instant case, as the majority correctly finds, Officer Schichtl and Officer Burnett had the authority to stop Fowler, ask him to approach their vehicle, and ask him his name. Doing so did not violate the constitution; nor did it violate Arkansas Rule of Criminal Procedure 2.2. Therefore, the officers lawfully stopped Fowler when they asked him his name under suspicious circumstances and requested that he come over to their car. According to Officer Schichtl, he "didn't know if [Fowler] had maybe stolen something."

In my opinion, this court should adopt an approach similar to the one adopted by the Georgia Court of Appeals and hold that flight after a lawful stop or command to stop constitutes obstructing governmental operations. This is the better view, as recognized by the Indiana Court of Appeals in *Cole v. State*, because of the dangers to police officers, suspects, and innocent bystanders that can and do occur during the inevitable pursuit after a suspect takes flight. For these reasons, I would hold that Fowler violated the obstructing governmental operations statute at Arkansas Code Annotated section 5–54–102(a)(1), when he fled from Officer Schichtl and Officer Burnett after they lawfully stopped him to ask him his name.

Moreover, Fowler violated the statute prohibiting the obstruction of governmental operations by falsely identifying himself to Officer Schichtl and Officer Burnett. Officer Schichtl testified that when he asked Fowler his name, he mumbled some-

thing unintelligible and then took off running. Officer Burnett, on the other hand, testified that in response to Officer Schichtl's request for his name, Fowler identified himself as "Jason" and then fled. It is clear from this testimony that Fowler did not identify himself by using his correct name. Falsely identifying oneself to a law enforcement officer is a clear violation of the obstructing governmental operations statute; therefore, Fowler was guilty of obstruction and was properly arrested for such violation. Fowler also violated Arkansas Rule of Criminal Procedure 2.2, as the circuit court noted, by his failure to cooperate with the police officers.

If the arrest for either fleeing or obstruction was valid, which I contend it is, and the police officers, shortly after the arrest, discovered Fowler was a parole violator, which led to the additional charges, this appears to be permissible and valid police work. I would not suppress the evidence based on an illegal arrest

For all of these reasons, I dissent.