
SLIP OPINION

# SUPREME COURT OF ARKANSAS

**No.** CV–16–151

|  |  |  |
|---|---|---|
| GREGORY L. PELTS | | **Opinion Delivered:** March 16, 2017 |
| | APPELLANT | APPEAL FROM THE LONOKE COUNTY CIRCUIT COURT [NO. 43DR-13-649] |
| V. | | |
| SHELLY A. PELTS | | HONORABLE WILL FELAND, JUDGE |
| | APPELLEE | |
| | | REVERSED AND REMANDED; COURT OF APPEALS OPINION VACATED. |

**SHAWN A. WOMACK, Associate Justice**

Appellant Gregory Pelts appeals the decree of the Lonoke County Circuit Court in his divorce from appellee Shelly Pelts. Gregory argues that the circuit court erred by awarding Shelly a marital portion of whichever military retirement benefit he ends up receiving instead of simply awarding the equivalent of a marital share of the reserve retirement in which he already had a vested interest at the time of his divorce. Gregory also asserts error in the circuit court's decision to require him to select a survivor benefit when he retires. Our court of appeals affirmed the decision of the circuit court. 2016 Ark. App. 75, 482 S.W.3d 345. Appellant petitioned this court for review, which was granted. When we grant a petition for review, we treat the appeal as if it had been originally filed in this court. *Fowler v. State*, 2010 Ark. 431, 371 S.W.3d 677. Our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(e) (2016). For the reasons outlined below, we agree that

the circuit court erred on both determinations. We reverse and remand for the circuit court to enter a decree consistent with this opinion.

## I.  *Facts*

Gregory and Shelly Pelts married in 1990 and divorced in 2014. Gregory has spent his career in the military, including substantial time in both reserve and active-duty roles. At the time of the divorce, he had already accumulated enough service years to be vested in the reserve retirement program, which will begin paying out when he turns 60 years old. If he serves four more years on active duty beyond the time of the divorce, he will become eligible for the active-duty retirement program, which will begin paying immediately from that point. Gregory will be 49 years old at that time. In addition to any differences in benefit levels, obtaining active-duty retirement would result in over a decade of additional retirement payments.

In the divorce decree, the circuit court granted Shelly a marital portion of Gregory's military retirement. The decree applies to his current expectation of reserve retirement, but also grants the same share of any active-duty retirement he will receive if he ultimately completes the requisite years to move up his retirement date. It also orders Gregory to pay for a survivor-benefit option for Shelly from whatever retirement payments he ends up receiving.

## II.  *Analysis*

We review divorce cases de novo; we review the division of property in a divorce for clear error. *See Skokos v. Skokos*, 344 Ark. 420, 425, 40 S.W.3d 768, 771–72 (2001). A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with



the definite and firm conviction that a mistake has been committed. *Id.* (citing *Huffman v. Fisher*, 343 Ark. 737, 38 S.W.3d 327 (2001)).

## A. Vested Interests

The expectation of retirement payments is an interest unlike traditional categories of property. Nevertheless, we have held that courts may divide such interests in divorce decrees if they are vested. *See, e.g., Day v. Day*, 281 Ark. 261, 663 S.W.2d 719 (1984). Whether a retirement interest is vested hinges on several factors, including whether the benefit "cannot be diminished by the [employer] and is not dependent upon . . . continued employment." *Id.* at 264, 663 S.W.2d at 720. We have also asked whether the interest was "fully distributive upon the date of the . . . divorce." *See Hackett v. Hackett*, 278 Ark. 82, 84, 643 S.W.2d 560, 562 (1982).

Applying this analysis to military retirement programs, we have concluded that "[i]f a divorcing spouse has achieved an entitlement to military retirement pay, that entitlement is an asset which may be divided between the parties to the divorce." *Christopher v. Christopher*, 316 Ark. 215, 216, 871 S.W.2d 398, 399 (1994). Further, when an interest in military retirement pay has vested, the spouse is entitled to any enhancements of that interest at the time the benefits are paid, even when those enhancements occur after the time of divorce. *Askins v. Askins*, 288 Ark. 333, 337, 704 S.W.2d 632, 634 (1986).

The question presented in this case is whether any property interest Gregory has in active duty retirement payments was vested and therefore subject to division at the time of the divorce. Answering this question depends on whether the reserve retirement statutory scheme—in which the parties agree Gregory has a vested interest—is distinct from the active

duty retirement scheme. If the schemes are distinct, and Gregory was vested only in the reserve program at the time of the divorce, then the circuit court erred as a matter of law in dividing the unvested interest in active-duty retirement pay. If the schemes are unified, then it was within the circuit court's discretion to treat any future active-duty payments as an enhancement of an already vested interest akin to *Askins*.

Shelly contends that the two programs are merely different facets of a unified military retirement interest, noting that reserve retirement counts active-duty years. *See* 10 U.S.C. § 12732 (including active-duty years served in the calculation of reserve retirement). She construes our cases to stand for the proposition that any vested interest toehold in any of the varieties of military retirement benefits is sufficient to divide other potential payments authorized in Title 10 of the United States Code.

Gregory instead argues that the reserve and active-duty retirement benefits are legally distinct programs. He points to federal law limiting eligibility for reserve retirement pay to those who are "not entitled, under any other provision of law, to retired pay from an armed force." 10 U.S.C. § 12731(a)(4). More broadly, Gregory argues, the programs are separate statutory schemes established in different serial statutes under Title 10. The eligibility requirements and structure of the reserve program are set out in 10 U.S.C. §§ 12731 to 12741; the same information about active-duty or "regular" retirement is in 10 U.S.C. §§ 1401 to 1414.

We are persuaded by both the statutory arguments and our case law on vesting that Gregory's vested property interest in the reserve retirement system at the time of his divorce is distinct from his potential future interest in active-duty payments. The parties do not

contest that if Gregory opted to leave the military immediately, he would receive no share of the active-duty retirement payments that might otherwise begin a decade before his anticipated reserve retirement. An interest that is contingent on continued employment is too speculative to be vested and subject to division. *See Day*, 281 Ark. at 264, 663 S.W.2d at 720. We reverse the circuit court's division of Gregory's speculative and nonvested interest in active-duty retirement benefits.[1]

## B. Survivor Benefit

Gregory also argues that the circuit court erred in ordering him to maintain survivor-benefit-plan coverage. Gregory has yet to opt in to a survivor-benefit plan, but he can do so either while still on active duty or when he begins receiving reserve retirement payments at age 60. Shelly contends that the court's decision was within its discretion and that the costs will, in any case, be borne by both parties in proportion with the division of the retirement payments.

Even if Shelly's argument that the *costs* of the survivor benefit will be paid by both parties' share of the retirement is correct, this ignores the inequality in the actual *benefit* of the survivor benefit. Any potential payout of the survivor benefit will accrue only to Shelly. Even if the costs are borne equally, the mandate that Gregory cofinance a unilateral benefit

---

[1] The dissent argues that Gregory's interest in reserve retirement cannot be vested in some distinct way from his potential for active-duty or regular retirement because he "will not receive any portion of his supposedly 'vested' reserve retirement benefits" if he ultimately continues his military service until active-duty retirement vests. As Gregory argued, however, the circuit court is empowered to award the monetary equivalent of a marital portion of the vested reserve retirement as of the date of the divorce even if Gregory ultimately receives active-duty retirement.


is an unequal division of property presumptively in need of justification under our divorce laws. *See* Ark. Code Ann. § 9-12-315 (Repl. 2015). We hold that the circuit court clearly erred in effecting an unequal division of property by ordering Gregory to maintain a survivor benefit plan without providing sufficient justification for why he must shoulder a share of the costs.

### III.    *Conclusion*

For the reasons set out above, we hold that the circuit court erred in treating Gregory's nonvested active-duty retirement interest as divisible property and in ordering him to maintain a survivor-benefit plan out of his retirement income for Shelly's sole benefit without providing sufficient justification for why Gregory must participate in the cost of the benefit. We reverse and remand for the circuit court to enter a decree consistent with this opinion.

Reversed and remanded; Court of Appeals opinion vacated.

KEMP, C.J., and GOODSON and WYNNE, JJ., concur in part and dissent in part.

**COURTNEY HUDSON GOODSON, Justice, concurring in part and dissenting in part.** I disagree with the majority's decision to reverse the circuit court's division of appellant Gregory Pelts's military retirement pay pursuant to the parties' divorce. Thus, I must dissent from that portion of the opinion.

During the divorce proceeding, appellee Shelly Pelts's entitlement to a marital portion of Gregory's military retirement was the primary issue in dispute. Shelly testified that she was entitled to one-half of the marital portion of Gregory's military retirement benefits based on the fact that he had served in the military throughout their entire twenty-

three-year marriage. Gregory's November 6, 2013 "Army National Guard Annual Statement" was introduced into evidence showing that he had entered the military in 1985 and that he had accumulated twenty-six years of creditable service and 6,367 points. The statement further provided that if he were to retire as of that date, he would receive $3,734.51 per month in benefits upon turning age sixty. Shelley explained that if Gregory retired immediately, he would not yet have reached twenty years of active-duty service, and he would not receive any reserve retirement benefits until age sixty. However, she indicated that he intended to remain in the military for four more years, at which point he would be forced to retire with thirty years of total service and would qualify for active-duty retirement benefits, which he would begin receiving immediately upon his retirement. Shelly stated that if Gregory received active-duty retirement, it would be based on the retirement points accumulated during all of his years in the military. She testified that active-duty retirement benefits and reserve-duty retirement benefits were not two separate systems but were instead based on the member's total creditable service. Thus, she indicated that it would be unfair for Gregory to divest her of his vested retirement based on his twenty-six years of creditable service, solely because he had not yet qualified to receive active-duty retirement benefits at the time of their divorce.

Gregory testified that even though he was presently vested in reserve-retirement benefits, he intended to pursue active-duty benefits, which he would receive immediately after retiring. According to Gregory, Shelly was entitled to only one-half of his reserve retirement, which he agreed he would never actually receive if he instead retired with twenty years of active duty. He admitted that the reserve time he had accumulated during

his marriage would be included in the military's calculations when determining his eligibility for active-duty benefits, although he indicated that it was not a one-to-one exchange. He also admitted that he was not an expert and that he was basing his testimony only off of his own personal beliefs and experiences.

Following the hearings and the submission of posttrial briefs by the parties, the circuit court ordered that "[t]he Plaintiff shall receive one-half of the marital portion of Defendant's military retirement, without reduction for disability compensation, and regardless of the form the benefits take, including but not limited to, whether the Defendant draws an active duty or reserve retirement, as the Court finds this is an asset of the marriage which cannot be divested." The court further stated:

> That in accordance with *Askins v. Askins*, 288 Ark. 333, 704 S.W.2d 632 (1986), and the facts herein, the Court finds that Plaintiff is entitled to the benefit of any enhancement to the retirement which may occur between the date of divorce and the Defendant's retirement. Therefore, should the Defendant draw his retirement benefits earlier than age sixty so shall the Plaintiff. The Plaintiff shall draw retirement benefits from the Defendant's military retirement whenever Defendant draws[.]

We review divorce cases de novo on appeal. *Moore v. Moore*, 2016 Ark. 105, 486 S.W.3d 766. The circuit court's findings pertaining to the division of property will not be reversed unless they are clearly erroneous or against the preponderance of the evidence. *Id.* A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Id.* We also give due deference to the circuit court's determination of the credibility of the witnesses and the weight to be given to their testimony. *Id.*

Based on the evidence presented by the parties, I simply cannot say that the circuit court clearly erred in finding that Gregory's military retirement pay was a marital asset

subject to equal division. While Gregory testified that reserve retirement and active-duty retirement are two separate retirement plans, he agreed that he will be entitled to receive only one retirement plan based on his total years of creditable service, which will include both his reserve and active service. Furthermore, Gregory offered no additional evidence or testimony to support his contention that there were two distinct retirement plans, and he admitted that he was not an expert on this issue.

We have previously held that if a divorcing spouse has achieved an entitlement to military retirement pay, that entitlement is a marital asset that may be divided between the spouses. *Christopher v. Christopher*, 316 Ark. 215, 871 S.W.2d 398 (1994); *Young v. Young*, 288 Ark. 33, 701 S.W.2d 369 (1986). Conversely, if the military spouse's right to receive military retirement pay has not vested, there is no asset to be divided upon divorce. *Christopher*, *supra*; *Burns v. Burns*, 312 Ark. 61, 847 S.W.2d 23 (1993).

Here, Gregory had achieved a vested entitlement to military retirement pay at the time of the parties' divorce. The precise amount of his retirement benefits and when he will begin to receive them are yet to be determined. However, to the extent that he receives increased benefits subsequent to the divorce, or he becomes entitled to receive his benefits sooner, this is merely a post-divorce enhancement to which the spouse is entitled pursuant to *Askins v. Askins*, 288 Ark. 333, 704 S.W.2d 632 (1986). *See also Brown v. Brown*, 332 Ark. 235, 962 S.W.2d 810 (1998) (reaffirming holding that postmarital enhancement in pension benefits may be marital in nature).

In addition to Gregory's failure to provide evidence below to support his position that there are two entirely separate military retirement plans at issue, he has also failed to

cite any convincing authority on appeal. To the contrary, Title 10 of the United States Code, which sets forth general military law, contains a provision that provides for the computation of "retired pay," and it includes both years of active service and reserve service in that computation. 10 U.S.C. § 1405 (2001). Similarly, 10 U.S.C. § 12732, which specifically discusses non-regular, or reserve service, includes active duty in the calculation of "retired pay" under that section.

Furthermore, cases from other jurisdictions discussing the issue of military retirement in the context of a divorce treat active-duty service and reserve service as two components of one military retirement system. In *Bojarski v. Bojarski*, 41 A.3d 544 (Maine 2012), the court explained that military retirement points can be earned in different ways, with reservists receiving one point per day of active service and fifteen points per year for membership in a reserve component. The court discussed the need for different formulas for determining the marital portion of military retirement benefits depending on whether the service member participated in only one type of service or both active-duty and reserve-duty service. *Id.*; *see also Dziamko v. Chuhaj*, 996 A.2d 893, 903 (Md. 2010) (stating that "military retired pay" while on active status is calculated based on the number of months of service, while credit for service while on inactive duty is calculated based on a point system); *In re Marriage of Beckman*, 800 P.2d 1376 (Colo. App. 1990) (discussing need for different method of calculation than one based strictly on time where member accumulates both active and reserve service). In fact, one article discussing military-service benefits under state law referred to Gregory's argument in his appeal to our court of appeals as "an *unusual* argument that active-duty and reserve military retirement are two distinct retirement plans."

Brett R. Turner, 2 *Equitable Distribution Of Property* 3d § 6:42, n. 15 (Nov. 2016) (emphasis added).

The majority bases its decision solely on Gregory's contention that he is not yet vested in active-duty retirement, whereas he is already vested in his reserve-retirement benefits. However, if Gregory completes four more years of active service as he intends to do, he will then become entitled to active-duty retirement benefits and will not receive any portion of his supposedly "vested" reserve retirement benefits. Thus, the fallacy of the majority's reasoning is demonstrated by the fact that, in an attempt to avoid awarding an interest in "unvested" retirement benefits, it is awarding Shelly an interest in benefits that even Gregory himself will likely not be entitled to receive in the future. Thus, I would affirm the circuit court's finding that Shelly was entitled to one-half of the marital portion of Gregory's military retirement pay, regardless of which type of benefits he ultimately receives.

I agree, however, with the majority's decision to reverse and remand on the issue of the survivor-benefit election. Shelly contends that the cost of the survivor-benefit plan will be shared by both parties because it is deducted from the retirement pay prior to the division of benefits to each party. *See* 10 U.S.C. § 1408(a)(4)(D) (2009). However, this is in conflict with the circuit court's ruling that Gregory is responsible for electing and paying for the survivor benefit. Furthermore, as Gregory asserts, the circuit court did not rule that Shelly was required to make a survivor-benefit election for him on her retirement plan, thereby leading to an unequal division of property without any explanation by the court. I therefore concur with this portion of the majority opinion.

KEMP, C.J., and WYNNE, J., join.

*Brent D. Watson, Attorney at Law, PLLC*, by:  *Brent D. Watson*, for appellant.

*Scholl Law Firm, P.L.L.C.*, by:  *Scott A. Scholl*, for appellee.