BART F. VIRDEN, Judge
A Garland County jury convicted appellant Benjamin Pitts of second-degree murder, two counts of first-degree battery, possession of a firearm by certain persons, and aggravated residential burglary. Pitts was sentenced to an aggregate term of eighty years in the Arkansas Department of Correction (ADC). Pitts raises two points on appeal. He does not challenge the sufficiency of the evidence supporting his convictions. Rather, he argues that the trial court erred in denying his motion to dismiss for violation of his right to a speedy trial and in denying his motion to suppress custodial statements made to his parole officer. We affirm.
I. Motion to Dismiss on Speedy-Trial Grounds
As relevant here, Arkansas Rules of Criminal Procedure 28.1(b) and 28.2(a) require the State to bring a criminal defendant to trial within twelve months *67 from the date of his or her arrest,[1] excluding only such periods of necessary delay as are authorized by Rule 28.3. If a defendant is not brought to trial within the requisite time, he or she is entitled to have the charges dismissed with an absolute bar to prosecution. Ark. R. Crim. P. 30.1(a). Once it has been shown that a trial will be held after the speedy-trial period set out in Rule 28.1 has expired, the State bears the burden of proving that the delay was the result of the defendant's conduct or was otherwise justified. Miles v. State , 348 Ark. 544, 75 S.W.3d 677 (2002). This court conducts a de novo review to determine whether specific periods of time are excludable under the speedy-trial rules. Federick v. State , 2012 Ark. App. 552, 423 S.W.3d 649.
The parties agree that Pitts was arrested on May 8, 2014, and that the time for trial commenced to run from that date. He was ultimately tried on October 23, 2017, or 1,264 days after his arrest. Because the trial was held well outside the twelve-month period allowed, the burden shifted to the State to show that Pitts was tried within twelve months once certain periods are properly excluded.
Pitts admits that any time after May 19, 2015, was properly charged to him. There are 376 days between Pitts's arrest on May 8, 2014, and May 19, 2015. In other words, the State must account for an additional eleven days that went beyond the twelve-month period allowed. Pitts maintains that there are only three periods at issue here: October 7 to November 18, 2014; November 18 to December 17, 2014; and January 20 to May 19, 2015. Exclusion of any one of these periods would make Pitts's trial timely, rendering a discussion of the other time periods unnecessary. We address the first period comprising forty-two days.
After his arrest, Pitts was held in the ADC for a parole violation. An omnibus hearing had been scheduled for October 7, 2014. On that date, the trial court was told that Pitts had not been transported to court for the hearing. During a discussion regarding the rescheduling of the hearing, the trial court expressed concern about a delay creating an issue with respect to speedy trial. Defense counsel said, "I'm going to take the time with the understanding if you will make a note that we did do a transport order, it was signed and delivered and it was not acted on." The trial court responded, "So noted. The time between this date and November 18, 2014, is excluded for speedy trial." The trial court documented on the docket that the time was excluded for speedy-trial purposes.
At the hearing on Pitts's motion to dismiss for violation of the speedy-trial rules, which was filed on October 6, 2017, the prosecutor argued that the reason Pitts could not be transported on October 7, 2014, was because of his misconduct at the ADC. Pitts then testified and claimed that the reason he had not been transported was because the detention center had been short staffed. In its subsequent order denying Pitts's motion to dismiss, the trial court ruled that, whether Pitts was not transported due to an altercation or a staff shortage, defense counsel had said that he would "take the time."
On appeal, Pitts makes several arguments that the trial court erred in excluding the period from October 7 to November 18, 2014. Our supreme court has said that the time to raise the issue of whether *68 a certain period is excludable is at the hearing where excludability is discussed. Mack v. State , 321 Ark. 547, 905 S.W.2d 842 (1995) ; Bowen v. State , 73 Ark. App. 240, 42 S.W.3d 579 (2001). At the time this period was excluded not only did Pitts's counsel not object to the time being charged to Pitts, he expressly agreed to "take the time" for speedy-trial purposes. Accordingly, Pitts waived any complaint about the propriety of excluding those forty-two days by not objecting below. See DeAsis v. State , 360 Ark. 286, 200 S.W.3d 911 (2005) ; Autrey v. State , 90 Ark. App. 131, 204 S.W.3d 84 (2005). Excluding this period, Pitts was tried 334 days after his arrest, which is less than the twelve-month period prescribed by the speedy-trial rules.
II. Motion to Suppress Custodial Statements
On April 30, 2014, Steve Swanigan entered an apartment and began shooting the occupants. The home invasion left one young woman dead, and a man and child were injured. Swanigan and a cohort, who had entered the apartment after him, fled the complex together in a vehicle. Circumstantial evidence at trial established that Pitts was that cohort. Pitts was arrested eight days later and held in jail. Five days after his arrest, Courtney Henry, Pitts's parole officer, visited him at the jail to read a parole-violation report based on the new charges he faced. Pitts made several statements to her that he later moved to suppress.
At the suppression hearing, Henry testified that on May 12, 2014, she went to the jail to serve Pitts with a parole-violation report. When Henry informed Pitts that he had been charged with capital murder, he said, "Why do they not have an accessory law in Arkansas?" Henry asked Pitts if he was an accessory, to which he responded, "Well, I'm not a capital murderer." According to Henry, Pitts said that he should not have been charged with capital murder and that no motive could be proved. She said that Pitts had initially used the pronoun "we," before stopping midsentence to instead say "they," when referring to the police's lack of understanding why the perpetrators committed the crime. Henry said that Pitts had stated that the police did not know whether the suspects had gone to the home to rob the place, talk with someone, or "deal with a prior situation between people." Henry said that Pitts-not in response to questioning-discussed the lack of evidence against him. For example, he stated that he knew that his face was not shown on camera. Henry testified that she saw Pitts again the following day, May 13, to notify him of his right to a hearing. She said that Pitts again spoke of the evidence against him and what he had told investigators without any questioning by her, aside from asking whether he wished to waive the hearing. Henry admitted that, although Pitts was in custody, she did not read him Miranda warnings before speaking with him on either day. She explained that she had been "acting under the scope of a parole officer, not an investigator."
The trial court denied Pitts's motion to suppress and found that he had made spontaneous statements to Henry that were not in response to questioning or interrogation. The trial court also found that Pitts had been advised of his Miranda rights on May 7, 2014, five days before he spoke with Henry, so he was aware of his rights at the time he made the spontaneous statements to Henry.
A statement made while in custody is presumptively involuntary, and the burden is on the State to prove by a preponderance of the evidence that a custodial statement was given voluntarily.
*69 Mosby v. State , 2018 Ark. App. 139, 544 S.W.3d 78. When reviewing the trial court's determination involving the voluntariness of a confession, we review the totality of the circumstances. Id. We will reverse a trial court's ruling only if it is clearly against the preponderance of the evidence. Id. Evaluating the credibility of witnesses who testify at a suppression hearing about the circumstances surrounding an appellant's custodial statement is for the trial court to determine, and this court defers to the trial court in matters of credibility. Id.
The United States Constitution's Fifth Amendment prohibition against compelled self-incrimination requires that an accused be given a series of warnings, including that the accused has the right to remain silent and the right to the presence of an attorney, before he or she is subjected to "custodial interrogation." Miranda v. Arizona , 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[T]he Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the Miranda safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of the police officers that they should have known were reasonably likely to elicit an incriminating response.
Rhode Island v. Innis , 446 U.S. 291, 300-02, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (emphasis in original) (footnotes omitted). A suspect's spontaneous statement while in police custody is admissible, and it is irrelevant whether the statement was made before or after Miranda warnings because a spontaneous statement is not compelled or the result of coercion under the Fifth Amendment's privilege against self-incrimination. Fricks v. State , 2016 Ark. App. 415, 501 S.W.3d 853. Moreover, a voluntary custodial statement does not become the product of an interrogation simply because an officer asks a defendant to explain or clarify something he or she already said voluntarily. Anderson v. State , 2011 Ark. 461, 385 S.W.3d 214.
On appeal, Pitts argues that Henry's reading of the parole-violation report, along with his new charges, including capital murder, was the functional equivalent of an interrogation because it was likely to elicit an incriminating response. Alternatively, he contends that he was subjected to express questioning by Henry when she asked whether he was an accessory to capital murder because she was actively seeking an incriminating response. He argues that, either way, Henry, as a law-enforcement official, was required to read him his Miranda rights and that her failure to do so rendered his statements to her inadmissible.
*70 While we reject Pitts's assertion that Henry's reading of a parole-violation report was the functional equivalent of an interrogation, Henry's question whether Pitts was an accessory to capital murder is more troubling. Although Henry confidently testified at trial that, as Pitts's parole officer, she was not required to give him Miranda warnings, we point out that there is a growing trend toward accepting that probation and parole officers must advise probationers and parolees in police custody of Miranda warnings before any questioning. In Minnesota v. Murphy , 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984), the United States Supreme Court suggested in a footnote that a parolee in police custody being interviewed by a parole officer may be entitled to Miranda warnings. Id. at 429 n. 5, 104 S.Ct. 1136. See also Fowler v. State , 2010 Ark. App. 23, 2010 WL 135209, vacated and affirmed on other grounds , 2010 Ark. 431, 371 S.W.3d 677 ; Beavers v. State , 2015 Ark. App. 124, 456 S.W.3d 783 (Virden, J., concurring).
Under the circumstances presented, however, we need not decide whether Henry's failure to give Pitts Miranda warnings before asking him the question whether he was an accessory rendered his statements inadmissible. This is because Pitts does not challenge the trial court's ruling that he was aware of his rights when he made statements to Henry given that he had received Miranda warnings five days before her visit. There is no constitutional requirement that a suspect be warned of his or her Miranda rights each time the suspect is questioned. Williams v. State , 363 Ark. 395, 214 S.W.3d 829 (2005). There is likewise no mechanical formula for measuring the longest permissible interval between the last warning and the confession. Id. Miranda warnings need only be repeated when the circumstances have changed so seriously that the accused's answers are no longer voluntary, or the accused is no longer making a knowing and intelligent relinquishment or abandonment of his or her rights. Id.
Here, Pitts does not argue that the prior Miranda warnings were insufficient to advise him of his rights; rather, he focuses on Henry's failure to readvise him of those rights. Given Pitts's failure to acknowledge, much less attack, what is an independent and alternative basis for the trial court's ruling, we must affirm the denial of Pitts's motion to suppress the custodial statements he made to his parole officer. Pugh v. State , 351 Ark. 5, 89 S.W.3d 909 (2002).
Affirmed.
Klappenbach and Whiteaker, JJ., agree.

Rule 28.2(a) provides that the time for trial shall commence running from the date of arrest or service of summons.