Cite as 2020 Ark. 331

# SUPREME COURT OF ARKANSAS
No. CV–20–527

|  |  |
|---|---|
| STAY STRONG, STATUS QUO, A LOCAL OPTION BALLOT QUESTION COMMITTEE, AND BEVANS FAMILY LIMITED PARTNERSHIP<br><br>APPELLANTS<br><br>V.<br><br>PAM BRADFORD IN HER OFFICIAL CAPACITY AS COUNTY CLERK OF VAN BUREN COUNTY, ARKANSAS<br>APPELLEE<br><br>LET VAN BUREN COUNTY VOTE, A LOCAL OPTION BALLOT QUESTION COMMITTEE<br>INTERVENOR/APPELLEE | **Opinion Delivered:** October 15, 2020<br><br>APPEAL FROM THE VAN BUREN COUNTY CIRCUIT COURT<br><br>HONORABLE SUSAN WEAVER, JUDGE<br><br>AFFIRMED. |

**RHONDA K. WOOD, Associate Justice**

Stay Strong, Status Quo, a local-option ballot-question committee, and Bevans Family Limited Partnership (together, Stay Strong) oppose Van Buren County Clerk Pam Bradford's certification of a local-option petition entitled "Let Van Buren County Vote – Wet/Dry Issue." Stay Strong appealed the certification to the circuit court, which denied relief. Stay Strong now seeks review of the denial. Intervenor/appellee Local Option Ballot Question Committee Let Van Buren County Vote (Sponsor) sponsored the petition. Stay Strong seeks either a remand because the circuit court dismissed the certification appeal without holding a hearing or a reversal because the circuit court erroneously concluded that

the petition form was facially valid and that one petition canvasser was not a paid canvasser. Stay Strong also argues that the petition must be removed from the general-election ballot because the circuit court did not decide, and this court will not have decided, its appeal of Bradford's certification more than sixty-five days before the general election. We affirm.

## I. *Background*

On August 4, 2020, Bradford, acting in her capacity as county clerk, certified the instant local-option petition. On August 14, 2020, Stay Strong filed a statutory appeal from Bradford's certification under Arkansas Code Annotated section 3-8-205(b) in circuit court. Stay Strong sought reversal of Bradford's certification because the petition form obtained additional information from the petition's signers and because one canvasser allegedly received compensation without fulfilling the paid-canvasser requirements.

On August 28, 2020, Bradford responded to the petition wherein she moved to dismiss the appeal. On August 31, 2020, Stay Strong filed a reply. On the evening of August 31, 2020, the circuit court entered an order denying Stay Strong relief. Stay Strong appealed to this court, and we expedited the appeal.

## II. *Standard of Review*

In reviewing a circuit court's decision on a motion to dismiss, we treat the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. *Dollarway Patrons for Better Schs. v. Morehead*, 2010 Ark. 133, 361 S.W.3d 274. The pleadings are liberally construed, and we resolve all reasonable inferences in favor of the complaint. *Id*. We look only to the allegations in the complaint and not to matters outside the complaint, like arguments of counsel and exhibits. *Oldner v. Villines*, 328 Ark. 296, 943

S.W.2d 574 (1997). We review issues of statutory interpretation de novo. *Daniel v. Ark. Dep't of Hum. Servs.*, 2017 Ark. 206, 520 S.W.3d 258.

### III. *Dismissal Without a Hearing*

Stay Strong first asserts that the circuit court erred by dismissing the statutory appeal *sua sponte*, without first taking evidence or holding a hearing. We disagree. Contrary to Stay Strong's assertion, Bradford had moved to dismiss before the court entered its order. Specifically, on August 28, 2020, Bradford responded to Stay Strong's appeal and, in her response, pleaded for a dismissal, in part, because the form of the petition and the signatures collected by Mr. Byard complied with Arkansas law. Stay Strong then filed a reply. Thus, the circuit court did not dismiss the appeal *sua sponte* or without argument from the parties.

Furthermore, the circuit court was not required to hear evidence or hold a hearing on Bradford's motion to dismiss. On a motion to dismiss, a circuit court's review is limited to the pleadings, without consideration of outside evidence or factual arguments. *See Oldner*, 328 Ark. at 300–01, 943 S.W.2d at 577. And the court's decision to hold a hearing on a motion to dismiss is discretionary, particularly when a written response is filed. *See* Ark. R. Civ. P. 12; *Hargis v. Hargis*, 2019 Ark. 321, 587 S.W.3d 208; *Loveless v. Agee*, 2010 Ark. 53, at 3 (citing *Smith v. Walt Bennett Ford, Inc.*, 314 Ark. 591, 864 S.W.2d 817 (1993) ("[A] trial court should either allow a written response to the motion or hold a hearing at which a response is heard.")). Because Stay Strong's arguments against Bradford's motion were advanced in writing, the circuit court did not abuse its discretion in deciding the motion to dismiss without a hearing. Therefore, we reject Stay Strong's contention that we should remand.

IV. *Validity of Petition Form*

Next, Stay Strong argues that the petition form was invalid because it violated Arkansas Code Annotated sections 3-8-805 and 806, which provide the information required for petition parts. Under section 805, the person signing the petition must be a registered voter and must "sign his or her own name and print his or her own name, address, birthdate, and the date of signing on a petition in his or her own handwriting." Ark. Code Ann. § 3-8-805(a) (Repl. 2017). Section 806 states that the petition part "shall be on substantially the following form . . ." Ark. Code Ann. § 3-8-806(a). The petition form provided in section 806 asks the signer to provide his "printed name, date of birth, residence, city or town of residence, and date of signing this petition." *Id.*

In its appeal to the circuit court, Stay Strong alleged that the petition parts were invalid because they asked petition signers for more information than sections 805 and 806 required, including a signer's telephone number and email address. It claimed that the Sponsor used this additional information to contact signers not registered to vote after they became registered. But regardless of the Sponsor's motivation for collecting this other information, the petition parts were valid because they included the information required by section 805 and substantially complied with the petition format included in section 806. The statute does not prohibit the collection of additional information, and we will not impose more requirements on the statute's plain language. Therefore, collecting this additional identifying information from petition signers does not negate the validity of the petition parts. We affirm the circuit court's dismissal of the petition-parts challenge.

4

## V. *Paid Canvassers*

Stay Strong also argues that the Sponsor lacks sufficient signatures for certification. It argues that many of the petition parts should be excluded because canvasser Byard was a "paid canvasser" under Arkansas Code Annotated sections 3-8-801 and 3-8-811 but failed to fulfill the statutory requirements for paid canvassers. Section 801 defines a paid canvasser as "a person who is paid or with whom there is an agreement to pay money *or anything of value* . . . for soliciting or obtaining a signature on a petition." Ark. Code Ann. § 3-8-801(3) (emphasis added). Similarly, section 811 states, "A canvasser is a paid canvasser if he or she is paid money or *anything of value* for soliciting signatures." Ark. Code Ann. § 3-8-811(b)(3)(B) (emphasis added).

Stay Strong alleged that Byard was a paid canvasser because he entered into a "for value" agreement with an attorney. The facts alleged were that Byard and the attorney agreed that Byard would carry and canvass another statewide petition for the attorney, and in exchange, the attorney would provide the legal assistance in any sufficiency challenges to the petition.

On review, considering these facts in the light most favorable to Stay Strong, we cannot say the circuit court erred. Stay Strong failed to allege sufficient facts to support a finding that Byard was a "paid canvasser." The exchanged for value, namely legal services, benefited the petition Sponsor, not Byard. Stay Strong did not plead that Byard, individually, received anything of value for canvassing this petition. Thus, we affirm. *See Ark. Dep't of Envtl. Qual. v. Brighton Corp.*, 352 Ark. 396, 403–09, 102 S.W.3d 458, 462–66 (2003).

5

## VI.  *Election-Timing Requirements*

### A.  Arkansas Code Annotated Section 3-8-205

Finally, Stay Strong argues we must reverse because its appeal will not be final more than sixty-five days from the November 3, 2020 election; therefore, the petition cannot remain on the ballot.[1] The timing parameters for setting elections for local–option petitions are provided in Arkansas Code Annotated section 3-8-205. Section 205(a) requires certified petitions to be placed on the ballot "at the next biennial general election as provided in § 3-8-101." But if a party appeals the certification, the election may take place at a later date.[2] Section 205(c) states, in that case, "the election shall be had no sooner than sixty-five (65) days after the appeal is determined, if the decision is in favor of the petitioners." The election could be rescheduled again if there is an appeal to the Supreme Court: section 205(d)(2) provides that "the county board of election commissioners *may*, in its discretion, delay the election until after the final decision of the Supreme Court." Section 205(d)(3)

---

[1]Initially Stay Strong raised the impact of § 3-8-205(c) and (d) in its letter to the court requesting an expedited hearing on its petition and now again as a point on appeal.

[2]Although not relevant given the outcome, in response to the dissent, we also explain this conclusion. In 1955, the General Assembly enacted § 3-8-101 prescribing that all local option elections involving the sale of alcohol must occur on the regular biennial November general election days. The General Assembly amended § 3-8-205 in 1985 and again in 1993 with the only provision for setting the election "as provided in § 3-8-101." The General Assembly changed course in 1997, when it amended § 3-8-205 and it added subsections (c) and (d), which did not include the requirement of setting the election according to § 3-8-101. Instead, the amendment specified alternative timing if an appeal of the certification occurred. In 2007, the General Assembly again amended § 205 further and extended the timing of an election in cases of sufficiency challenges in subsections (c) and (d) to be "no sooner than sixty-five days and no later than ninety days". This court cannot interpret the deliberate and repeated acts of the legislature to be meaningless.

provides the timeline for the resetting of the election date if the commission chooses to delay the election.

Stay Strong's argument for reversal based on the timing of its statutory appeal is two-fold. First, it contends that the petition must be removed from the ballot because the circuit court decided the appeal sixty-four days before the November 3, 2020 election. Second, it alleges our decision will not be final sixty-five days before the election.

## B. Circuit Court Appeal

Stay Strong appealed Bradford's certification to the circuit court under section 205(b). Stay Strong asserts that the petition violates section 205 because the statute provides the election shall be held no sooner than sixty-five days following the circuit court's decision to uphold the clerk's certification. We hold that the order was timely because the sixty-five-day deadline fell on Sunday, August 30, 2020, so the deadline was the following Monday, August 31, 2020. *See* Ark. Code Ann. § 7-1-108 (Repl. 2018). This adheres to our past decisions. *See Richardson v. Martin*, 2014 Ark. 429, 444 S.W.3d 855.

In *Richardson*, this court determined whether an initiative petition for a constitutional amendment was filed timely. *Id*. at 3–6, 444 S.W.3d at 858–59. The petition was filed on July 7, 2014, but the Amendment 7 filing deadline of "not less than four months before the election" fell on July 4, 2014, a state holiday. *Id*., at 4, 444 S.W.3d at 858. After reading Amendment 7 "in light of other provisions relating to the same subject matter," including Amendment 51, § 9(l) and Arkansas Code Annotated section 7-1-108, we concluded that because the election deadline occurred on a legal holiday, the deadline effectively fell on

"the next day which [was] not a Saturday, Sunday, or legal holiday." *Id.* at 6, 444 S.W.3d at 859.

Following *Richardson*, we conclude that the requirement of section 205(c) was satisfied. Although section 205 does not discuss Sunday deadlines, Title 7 of the Arkansas Code does provide the general election provisions. Arkansas Code Annotated section 7-1-108 states that "if an election law deadline occurs on a Saturday, Sunday, or legal holiday, the deadline shall be the next day which is not a Saturday, Sunday, or legal holiday." In the absence of specific guidance from section 205, the more general statute, section 7-1-108, controls. *See Scott v. Greer*, 229 Ark. 1043, 320 S.W.2d 262 (1959). We also note that the General Assembly amended section 205 after *Richardson* and did not choose to limit its application. Therefore, although the circuit court decided Stay Strong's appeal sixty-four days before the election, no violation occurred because the sixty-fifth day was a Sunday.

## C. Arkansas Supreme Court Appeal

Stay Strong next argues, citing section 205(d)(3), that we must reverse because the election will occur less than sixty-five days from our decision in this appeal. In making this argument, Stay Strong misreads section 205. Section 205(d) dictates the petition appeal process beyond the circuit court. That section first provides that if the circuit court's decision affirmed the certification, then the challenger may take an appeal "from the final decision of the circuit court." Ark. Code Ann. § 3-8-205(d)(1)(B). Section 3-8-205(d) then states,

> (2)    In that event, the county board of election commissioners ***may***, in its discretion, ***delay*** the election until after the final decision of the Supreme Court.

8

> (3)     If the decision is in favor of the petitioners, then the county board of election commissioners shall set the day for the election, which shall be not earlier than sixty-five (65) days nor later than ninety (90) days after the final decision of the Supreme Court.

(Emphasis added.) Reading section 205(d)(2), even if the circuit court's decision favors petitioners, the board of election commissioners may choose to delay the election until after this court decides the appeal. Section 205(d)(3) then establishes the parameters for setting the election if a delay occurred.

Stay Strong's argument that section 205(d)(3) requires that the board always set the election not earlier than sixty-five days from our final decision disregards section 205(d)(2). According to the surplusage canon of statutory construction, every phrase within a statute must be given meaning: "The courts must lean in favor of a construction which will render every word operative, rather than one which may make some idle or nugatory." Antonin Scalia & Bryan A. Garner, *Reading the Law: The Interpretation of Legal Texts* 174 (2012). We cannot disregard section 205(d)(2) or its location within the statutory scheme. Certainly, if the commissioners set the election pursuant to subdivision (d)(1)(A), they would not need to set another day for the election under subdivision (d)(3). Reading the statute as a whole and harmoniously, section 205(d)(3) applies when the county board of election commissioners has chosen to delay the election pending this court's decision. But here, nothing in the record suggests that the commissioners have delayed the election. As a result, section 205(d)(3) does not apply. We therefore decline to address any other arguments concerning section 205(d)(3).

VII. *Conclusion*

We affirm the circuit court's denial of Stay Strong's appeal of the certified election petition. The petition form, which requested additional information from signers, was not invalid. We need not strike the petition parts collected by canvasser Byard because he was not subject to the paid-canvasser statutory requirements. Finally, the record does not indicate that the election commissioners have delayed the election pending our decision. Because the election has not been delayed, the election does not need to be reset, and Arkansas Code Annotated section 3-8-205(d)(3) is inapplicable.

Affirmed.

Mandate to issue immediately.

Special Justice JOHN R. SCOTT joins in this opinion.

WYNNE and WOMACK, JJ., dissent.

BAKER, J., not participating.

**ROBIN F. WYNNE, Justice, dissenting.** I agree with the majority's conclusions in Parts III, IV, and V. But I dissent because I do not think the statutory-timing issues are properly before us in this appeal. I also think the majority has gone beyond this court's proper role in interpreting those statutory issues.

First, the statutory-timing issues are not properly before us in this appeal. In its order, the circuit court found that the form of the petition is valid and consistent with Arkansas law and that Byard was not a paid canvasser. The circuit court did not address the timing issues. We do not presume a ruling from the circuit court's silence and will not review a matter on which the circuit court has not ruled. *Ark. Lottery Comm'n v. Alpha Mktg.*, 2012

10

Ark. 23, at 7, 386 S.W.3d 400, 404. Moreover, the parties did not argue the timing issues below. The only references to the statutory time frames appear in correspondence to the circuit court. In a letter to the circuit court, appellees argued that Arkansas Code Annotated section 3-8-205(c) and (d)(1)(A) prohibited the election from being held sooner than sixty-five days after the circuit court's ruling. Counsel for Bradford agreed in an email to the circuit court that a timely ruling was needed. No party mentioned the statutory time frames applicable when an appeal is taken to this court. It is well settled that we will not consider arguments made for the first time on appeal. *Teris, LLC v. Chandler*, 375 Ark. 70, 88, 289 S.W.3d 63, 75 (2008). Therefore, I think the timing issues should be decided in the companion case, *Stay Strong, Status Quo v. Van Buren Cty.*, 2020 Ark. 329 (CV-20-548).

Nevertheless, because the majority addresses the merits of the statutory-timing issues here, I will do so as well. Arkansas Code Annotated section 3-8-205 governs the timing of elections on local-option petitions. If the county clerk determines that a petition is sufficient, the clerk certifies that finding to the county board of election commissioners for placement on the following biennial general-election ballot. Ark. Code Ann. § 3-8-205(a).[1] If an appeal is taken to the circuit court, "the election shall be had no sooner than sixty-five (65) days after the appeal is determined, if the decision is in favor of the petitioners." Ark. Code Ann. § 3-8-205(c). After the circuit court's decision,

> [t]he decision shall be certified immediately to the county board of election commissioners, and the day for the election shall be fixed by the county board of election commissioners for not earlier than sixty-

---

[1]Arkansas Code Annotated section 3-8-101 provides that local option elections "shall be held only on the regular biennial November general election days."

11

five (65) days nor later than ninety (90) days after the certification of the decision of the circuit court.

(B) Any appeal from the final decision of the circuit court shall be taken within ten (10) days and shall be advanced and immediately determined by the Supreme Court.

(2) In that event, the county board of election commissioners may, in its discretion, delay the election until after the final decision of the Supreme Court.

(3) If the decision is in favor of the petitioners, then the county board of election commissioners shall set the day for the election, which shall be not earlier than sixty-five (65) days nor later than ninety (90) days after the final decision of the Supreme Court.

Ark. Code Ann. § 3-8-205(d)(1)–(3). The majority concludes that the provision in section 3-8-205(d)(3) requiring the election to be held no earlier than sixty-five days and no later than ninety days after the final decision of this court only applies when the county board has delayed the election pending our decision pursuant to section 3-8-205(d)(2).

In reaching this conclusion, the majority rules on an issue that was neither argued by the parties nor decided by the circuit court. It is true that this court reviews issues of statutory interpretation de novo. *Arkansas Dep't of Corr. v. Shults*, 2018 Ark. 94, at 4, 541 S.W.3d 410, 412. But as I noted above, the circuit court did not interpret the statute in its ruling.[2] We have repeatedly held that we will not make a party's argument for them or raise an issue sua sponte, unless it involves the circuit court's jurisdiction. *Reeve v. Carroll Cty.*, 373 Ark.

_____

[2] I also note that in *Stay Strong, Status Quo v. Van Buren Co.*, 2020 Ark. 329 (CV-20-548), the circuit court did not make a ruling on the applicability of Arkansas Code Annotated section 3-8-205(c) or (d), other than finding "that a determination on the appeal was made and a decision in favor of the petitioners was entered within the statutorily prescribed timeframe."

584, 587, 285 S.W.3d 242, 245 (2008). And this court will not consider an argument that is not properly developed. *Id.* Moreover, "[o]ur adversary system is designed around the premise that the parties know what is best for them and are responsible for advancing the facts and arguments entitling them to relief." *Moore v. Moore*, 2016 Ark. 105, at 16, 486 S.W.3d 766, 776 (Brill, J., dissenting) (quoting *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in judgment)). No party argued that section 3-8-205(d)(3) only applied when the county board delayed the election pursuant to section 3-8-205(d)(2). In fact, no party made any argument concerning section 3-8-205(d)(B)(2). No party even argued that a local-option election can be held on any date other than the regular biennial November general-election day, as set forth in section 3-8-101.

In my view, nothing in the statute limits the requirement of section 3-8-205(d)(3) that the election be held no earlier than sixty-five days after this court's decision to only those instances in which the county board has delayed the election. There is no such limiting language in section 3-8-205(d)(3), and we will not read into a statute a provision that was not included by the legislature. *See Keep Our Dollars in Independence Cty. v. Mitchell*, 2017 Ark. 154, at 7, 518 S.W.3d 64, 68–69. When the county clerk's certification is appealed, the plain language of the statute requires that the county board set the election for not earlier than sixty-five days nor later than ninety days after the decisions of both the circuit court and this court. Whether the county board has delayed the election does not change that timing requirement.

In sum, Arkansas Code Annotated section 3-8-205 requires a local-option election to be held not earlier than sixty-five days nor later than ninety days after the decision of this court when an appeal is taken. Here, the election is set for November 3, 2020—less than three weeks from today. We did not decide this appeal in time for Van Buren County residents to vote on the local-option petition in the November 3, 2020 general election.

WOMACK, J., joins.

*Streett Law Firm, P.A.*, by: *James A. Streett*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellants.

*Murphy, Thompson, Arnold, Skinner & Castleberry*, by: *Kenneth P. "Casey" Castleberry*, for appellee Let Van Buren County Vote, a Local Option Ballot Committee.